[No. 49156-9. En Banc. January 12, 1984.]

JOHN LUND, *Appellant*, v. ALAN CAPLE, ET AL, *Respondents*.

*David A. Summers,* for appellant.

*Robert P. Piper, Philip A. Talmadge,* and *Allen R. Sakai* (of *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.*); *Christopher W. Tompkins* (of *Betts, Patterson & Mines, P.S.*); *Kenneth Cornell* (of *Moren, Lageschulte & Cornell, P.S.*); and *Murray, Dunham & Murray,* for respondents Caple.

*D. Michael Tomkins* and *Rosemary J. Irvin,* for respondent Westgate Chapel.

BRACHTENBACH, J.—This case poses the question whether a husband's lawsuit for loss of consortium damages is barred by this court's abolition of alienation of affections

actions in *Wyman v. Wallace,* 94 Wn.2d 99, 615 P.2d 452 (1980). The husband brought suit against Westgate Chapel and Pastor Caple alleging that sexual relations between his wife Nanette and Caple constituted outrageous conduct and/or negligent impairment of consortium. The trial court granted defendants' summary judgment motions and dismissed the case, reasoning that the suit amounted to an action for alienation of affections. We affirm and hold that a spouse may not maintain an independent action for loss of consortium damages if that suit is essentially a substitute for an alienation of affections suit.

Alan Caple served as pastor of Westgate Chapel, a church which Mr. and Mrs. Lund attended. In July of 1979 Nanette Lund consulted Caple for marital and personal counseling. The two met for three weekly counseling sessions; they then agreed no further sessions were necessary, but that they could remain "friends". John Lund did not participate in the counseling sessions. After the final session, Caple and Mrs. Lund telephoned each other often and met intermittently over a 2–year period. Eventually, they engaged in sexual relations.

In May 1981, lay officials of the Chapel learned of the relationship and confronted the pastor. Caple then ended his relationship with Nanette and in July of 1981 resigned as pastor.

Upon discovery of the relationship, Mr. Lund filed suit seeking recovery from Caple on two theories: negligent impairment of consortium and outrage. Nanette refused to join in the lawsuit. Mr. Lund also sought recovery from Westgate Chapel under two theories: negligent hiring and retention of Caple and respondeat superior. The trial court granted defendants' motion for summary judgment and dismissed the lawsuit.

I

The husband's first tort theory is that Caple's conduct constitutes outrage. The elements of outrage, as stated in the Restatement (Second) of Torts § 46 (1965) and

adopted by this court, are:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . .

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time . . .

*Contreras v. Crown Zellerbach Corp.,* 88 Wn.2d 735, 737 n.1, 565 P.2d 1173 (1977). *Grimsby v. Samson,* 85 Wn.2d 52, 59, 530 P.2d 291, 77 A.L.R.3d 436 (1975). The fatal flaw in appellant's outrage theory is that he was not present when the alleged outrageous conduct occurred, and did not even learn of the conduct until several months later. Since appellant was not present, he has not established the tort of outrage. Such presence is a crucial element of a claim for outrage when the conduct is directed at a third person. Restatement § 46(2)(a).

## II

The nature of the husband's second tort theory is less straightforward. In general it may be characterized as a tort action in which a "deprived"[1] spouse sues for loss of consortium, without joining the "impaired" spouse upon whose injuries the loss of consortium claim is necessarily based. This claim raises at least two distinct questions. May one spouse sue alone for loss of consortium? If so, are the allegations so similar to an alienation of affections lawsuit as to be barred as a matter of policy? The resolution of these questions requires reconciling two decisions of this court: *Wyman v. Wallace, supra,* in which we abolished alienation

---

[1]The terminology used should be clarified. The Restatement characterizes the potential plaintiffs in this type of lawsuit as follows: an "impaired" spouse is one who suffers bodily harm as a result of tortious conduct; while a "deprived" spouse is one who sues for loss of services and society. Restatement (Second) of Torts § 694(a) (1977). Here, John Lund is the "deprived" spouse, suing for loss of consortium. Nanette is the "impaired" spouse who allegedly suffered the underlying injuries.

of affections as a viable lawsuit and *Lundgren v. Whitney's Inc.,* 94 Wn.2d 91, 614 P.2d 1272 (1980), in which we awarded loss of consortium damages to a spouse not directly injured by tortious conduct.

## A

The question of whether a loss of consortium claim may be maintained as a cause of action without joining the other spouse's underlying tort claims is a novel one. Since an element of loss of consortium is a separate, direct injury to a spouse, most such cases involve the claims of both spouses. An example is *Lundgren v. Whitney's Inc., supra,* in which this court allowed a wife to recover for loss of consortium damages. In that case, an action for negligence based on a truck accident in which the husband sustained personal injuries, both husband and wife were plaintiffs. The present case differs because the "impaired" spouse (the wife) is not a party to the lawsuit.

█ Respondents argue that the directly injured spouse must be a party to any action in which the noninjured spouse is seeking loss of consortium damages. Dean Prosser unequivocally characterizes such lawsuits as separate:

> The action of the husband and parent is entirely distinct from that which may be maintained on behalf of the wife or child for the original tort itself.

W. Prosser, *Torts* § 125, at 889 (4th ed. 1971). Discussing joinder of claims, the Restatement (Second) of Torts is equally definitive in characterizing loss of consortium as a separate cause of action.

> The invasion of the deprived spouse's interests in the marriage is a separate tort against that spouse, although it is conditioned upon factors that also constitute a tort against the impaired spouse.

Restatement (Second) of Torts § 693(g) (1977). Although the cases normally involve res judicata or collateral estoppel issues, most courts also consider loss of consortium a distinct injury that may be recovered in a separate action. *E.g., Millington v. Southeastern Elevator Co.,* 22 N.Y.2d

498, 239 N.E.2d 897, 293 N.Y.S.2d 305 (1968); *but see Sisemore v. Neal*, 236 Ark. 574, 367 S.W.2d 417 (1963).

In Washington RCW 4.08.030(1) provides:

Either husband or wife may sue on behalf of the community: *Provided*, That

(1) When the action is for personal injuries, the spouse having sustained personal injuries is a necessary party;

This court has not construed the statute. Respondents contend that under the statute the wife was a necessary party to any action based upon Caple's alleged tortious conduct and absent her joinder the lawsuit should be dismissed. That argument, however, does not sufficiently account for the distinct nature of the injuries to the "deprived" spouse. Loss of consortium relates to the "'loss of love, affection, care, services, companionship, society and consortium . . .'". *Lundgren*, at 94. As such, the alleged injuries relate solely to the "deprived" spouse and are distinguishable from the cause of action of the "impaired" spouse. The better rule is that a "deprived" spouse may sue for loss of consortium damages by either joining in a lawsuit with the spouse who sustained primary injuries or by bringing an independent suit.

## B

The next question involves policy arguments raised by the husband's theory that Caple should be held liable for negligent impairment of consortium. In effect, "negligent impairment of consortium" describes a separate tort. An element of this cause of action is the tort committed against the "impaired" spouse. *Lundgren v. Whitney's Inc., supra.* In this case, the alleged underlying tort is negligence. Appellant's negligence theory is essentially pastoral malpractice. The theory is presented by analogy because this court has never set out a standard of care for pastors. *See, e.g., Walker v. Bangs*, 92 Wn.2d 854, 859, 601 P.2d 1279 (1979) (attorney's standard of care).

■ In opposition to that theory, respondents argue that even if an action for pastoral malpractice may be maintained in some situations, dismissal of this case was proper because the gravamen of appellant's case is an action for alienation of affections. The elements of the tort of alienation of affections are:

> (1) an existing marriage relation; (2) a wrongful interference with the relationship by a third person; (3) a loss of affection or consortium; and (4) a causal connection between the third party's conduct and the loss.

*Carrieri v. Bush,* 69 Wn.2d 536, 542, 419 P.2d 132 (1966). In this case those precise elements are presented in the husband's complaint. *Wyman v. Wallace, supra,* however, abolished that tort and appellant cannot maintain an action based solely upon such a theory. *Accord, Irwin v. Coluccio,* 32 Wn. App. 510, 648 P.2d 458 (1982) (action for criminal conversation abolished). We believe, however, that the policies underlying *Wyman* require us to go beyond the mere labels on appellant's claim and consider the nature of his claims.

Appellant claims that Caple's sexual relations with appellant's wife constitute a breach of his professional duties as a counselor that resulted in emotional distress to Nanette. This emotional distress, in turn, so affected Nanette that appellant allegedly lost the benefit of her services and companionship. In essence, Lund seems to claim that his wife's extramarital relations with Caple damaged the Lunds' marital relationship. As such, that claim clearly would satisfy the elements of an action for alienation of affections quoted above. *Carrieri,* at 542. Respondents, therefore, argue that as a matter of policy this suit should be barred as an attempt to sue for alienation of affections under a different label. The trial court agreed and decided that Lund's allegations circumvented the abolition of the alienation of affections tort.

Other state courts have examined similar claims and concluded that although labeled differently, the plaintiffs in

effect were seeking damages for alienation of affections or criminal conversation. For example, in *Goldberg v. Musim,* 162 Colo. 461, 427 P.2d 698 (1967), a wife brought suit against her husband's girl friend alleging impairment of contract. The wife's theory was that the girl friend convinced the husband to leave the wife, in order for the girl friend to acquire the property and estate accumulated during the marriage. The Colorado Supreme Court held that the complaint set forth a claim for alienation of affections. *Goldberg,* at 467. Since that action had been abolished by statute, the court affirmed the trial court's dismissal of the complaint.

Similarly, the Michigan Court of Appeals dismissed a complaint because it constituted an action for alienation of affections, even though plaintiff had alleged breach of contract, malpractice, assault and battery, negligence and fraud. *Nicholson v. Han,* 12 Mich. App. 35, 162 N.W.2d 313 (1968). The case is noteworthy because on the basis of facts very similar to this case the court found that plaintiff's theories were in substance an alienation of affections lawsuit. In *Nicholson,* the plaintiff and his wife consulted the defendant doctor for psychiatric and marriage counseling services. According to the plaintiff, instead of rendering the agreed–upon services, the doctor persuaded plaintiff's wife to engage in sexual relations with defendant and obtain a divorce. The Michigan statutes abolished the torts of alienation of affections and criminal conversation. The Michigan Supreme Court found that the gravamen of the complaint sounded in tort rather than contract. Since plaintiff argued the fact of the marriage, adulterous intercourse, the inducement to divorce, as well as the loss of society and services, the complaint placed it "squarely within the abolished actions . . .". *Nicholson,* at 43–44. Therefore, the dismissal of the action was affirmed.

As we recognized in *Wyman* there are several policy reasons for eliminating alienation of affections as a viable lawsuit:

(1) The underlying assumption of preserving marital harmony is erroneous; (2) The judicial process is not sufficiently capable of policing the often vicious out-of-court settlements; (3) The opportunity for blackmail is great since the mere bringing of an action could ruin a defendant's reputation; (4) There are no helpful standards for assessing damages; and (5) The successful plaintiff succeeds in compelling what appears to be a forced sale of the spouse's affections.

*Wyman,* at 105. Those same considerations apply with equal force in the present case.

Here, John Lund is suing because of alleged sexual misconduct that interfered with his marriage. His wife did not join the lawsuit, which alone would not bar the action, but does indicate at least the possibility of a vengeful motive or a so-called "forced sale" on the part of a wronged husband. As such, this lawsuit is so similar to an alienation of affections action that as a matter of policy it falls within the prohibitions of *Wyman v. Wallace, supra.*

This opinion, however, should not be read as precluding an action against a counselor, pastoral or otherwise, in which a counselor is negligent in treating either a husband or wife. It is conceivable that a malpractice action would be appropriate where a counselor fails to conform to an appropriate standard of care, injures the patient/spouse which in turn results in loss of consortium damages to the other spouse. Where, however, the alleged underlying tort is based upon an extramarital relationship with the "impaired" spouse and the "impaired" spouse does not desire to assert a claim, such an action becomes in essence a suit for alienation of affections. Absent the "impaired" spouse's claims, remaining allegations amount to an alienation of affections action, *i.e.,* a viable marital relationship, wrongful interference with the relationship by a third person, loss of consortium and a causal connection. Therefore, we hold the prohibition of alienation of affections actions extends to those cases in which a lone spouse sues a third party for alleged sexual misconduct with his or her spouse and seeks only loss of consortium damages.

The trial court is affirmed.

WILLIAMS, C.J., ROSELLINI, UTTER, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.

Reconsideration denied March 5, 1984.