490 N.W.2d 469 (1992)
Jim R. CARLSON, Appellant,
v.
John H. CHAIN, also known as Jack Chain, also known as J.H. Chain, Individually and as President of Chain Oil, Inc., and Chain Oil, Inc., Appellees.
No. A-92-042.
Court of Appeals of Nebraska.
September 29, 1992.
*471 Dorothy A. Walker, of Mowbray & Walker, P.C., Lincoln, for appellant.
Paul E. Hofmeister, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., and James L. Zimmerman, of Atkins, Ferguson, Zimmerman & Carney, Scottsbluff, for appellees.
SIEVERS, Chief Judge, and CONNOLLY and MILLER-LERMAN, Judges.
CONNOLLY, Judge.
This appeal arises from an order sustaining a demurrer. Jim R. Carlson brought suit against John H. Chain (Chain) and Chain Oil, Inc. (Chain Oil), alleging that Chain fraudulently misrepresented his relationship with Carlson's wife, intentionally inflicted emotional distress on Carlson, invaded Carlson's privacy, and cast Carlson in a false light. Chain's demurrer to Carlson's second amended petition was based on the ground that it failed to state facts sufficient to constitute a cause of action, pursuant to Neb.Rev.Stat. § 25-806(6) (Reissue 1989). Carlson assigns as error that the district court erred in sustaining a demurrer to his second amended petition and in dismissing the action. We affirm.
Carlson's second amended petition generally alleges that in September 1970, Chain and Chain Oil hired Carlson's wife, Sandra Sue Carlson, to be the sole office staff for Chain Oil. At the time, Carlson and his wife enjoyed good marital relations. Carlson frequently visited Chain's office, and during such visits, Chain sought Carlson's advice for starting a cattle feeding business. During these visits, Chain gave no indication that he had a sexual interest in Carlson's wife.
On July 25, 1990, Sandra Sue Carlson's employment with Chain Oil was terminated when Chain had her arrested for embezzlement in Denver, Colorado, as she returned from a trip to Japan.
In 1990, Gering State Bank forced Carlson to dissolve his livestock feeding business. In 1991, Carlson declared bankruptcy.
The second amended petition contained three theories of recovery. The alleged operative facts are as follows: Carlson alleged that Chain had fraudulently misrepresented Chain's relationship with Carlson's wife so that Carlson believed his wife was employed by Chain to serve as office staff, whereas Chain had sexually assaulted, molested, and harassed Carlson's wife over a period of 17 years in the course of her employment. Said sexual conduct caused Carlson's wife to develop posttraumatic stress disorder (PTSD). As a result of the alleged PTSD, the wife was psychologically and physically impaired and was unable to disclose Chain's alleged sexual assault of her to her husband, the appellant. Further, she was unable to respond sexually and emotionally to Carlson. Carlson further alleged that Chain had intentionally inflicted emotional distress on Carlson when Carlson learned of Chain's sexual conduct toward Carlson's wife. Carlson alleged that Chain's conduct was outrageous in character and extreme in degree. Finally, Carlson alleged that Chain had invaded Carlson's privacy and depicted Carlson in a false light when Chain informed the Gering State Bank that Carlson had embezzled funds, thereby causing Carlson's business to fail.
In reviewing an order sustaining a demurrer, an appellate court accepts the truth of facts well pled and the factual and legal inferences which may reasonably be deduced from those facts, but does not accept conclusions of the pleader. Balfany v. Balfany, 239 Neb. 391, 476 N.W.2d 681 (1991). For the purpose of this appeal, we assume the facts pled are true, and we must determine whether any cause of action has been properly pled.
Carlson's second amended petition stated three theories of recovery, which the petition labeled as three "causes of action." At this point, we mention the fact that *472 there were not three causes of action alleged. In reality, Carlson alleged two causes of action. The first cause of action consisted of facts alleged to support recovery for both fraudulent misrepresentation and intentional infliction of emotional distress. The second cause of action consisted of facts alleged to support recovery for invasion of privacy and presentation in a false light. ` " `[A] cause of action consists of the set of facts on which a recovery may be had.'"' Lewis v. Poduska, 240 Neb. 312, 316, 481 N.W.2d 898, 901 (1992) (quoting Lewis v. Craig, 236 Neb. 602, 463 N.W.2d 318 (1990)). Carlson's second amended petition alleges two sets of operative facts.
FRAUDULENT MISREPRESENTATION
For his first theory of recovery, Carlson alleged fraudulent misrepresentation. The question on appeal is whether Carlson has pled a cause of action to support recovery under a theory of fraudulent misrepresentation.
We assume as a basic fact that Chain spoke to Carlson on one or more occasions. We also assume for purposes of this appeal only that Chain sexually assaulted, molested, and harassed Sandra Sue Carlson. The question is whether the facts pled show that Chain fraudulently misrepresented his sexual relationship with Carlson's wife.
The Nebraska Supreme Court set forth the elements of fraudulent misrepresentation in Dammann v. Litty, 234 Neb. 664, 672, 452 N.W.2d 522, 528 (1990), as follows:
"To recover in an action for fraud based on a misrepresentation of fact, a plaintiff must prove that (1) the defendant made a representation of a material fact; (2) the representation was false; (3) the representation, when made, was known to be false or was made recklessly as a positive assertion without knowledge concerning the truth of the representation; (4) the representation was made with the intention that the plaintiff would rely on it; (5) the plaintiff reasonably relied on the representation; and (6) as the result of such reliance, the plaintiff suffered damage."
In his second amended petition, Carlson does not allege any representations which Chain made to him concerning his wife's employment. Counsel for Carlson admitted at oral argument that there were no such representations. Since Carlson has not alleged any representation, let alone a false representation, concerning the material fact of his wife's employment, Carlson has failed to allege a cause of action.
It is evident from Carlson's second amended petition that all damages that he seeks under this theory of recovery stem from loss of consortium with his wife. Since he is not in any way seeking recompense for any personal injury to his body or psyche, the averments in Carlson's second amended petition appear to state a cause of action for alienation of affections. "Alienation of affections consists of a third person's wrongful conduct intruding upon or interfering with the marital relationship between husband and wife and causing a loss of consortium." Creason v. Myers, 217 Neb. 551, 553, 350 N.W.2d 526, 527 (1984). The cause of action for alienation of affections was abolished by the Legislature in 1986. See Neb.Rev.Stat. § 25-21,188 (Reissue 1989).
An analogous situation was presented in Homer v. Long, 90 Md.App. 1, 599 A.2d 1193, cert. denied 326 Md. 177, 604 A.2d 444 (1992), in which a husband sought damages from his wife's psychotherapist for negligent misrepresentation of the therapist's sexual relationship with the plaintiff's wife. The court stated:
"[W]e wish to make clear that abolition of the actions for alienation of affections and criminal conversation does not preclude a person from maintaining a traditional breach of contract action or a recognized tort action merely because the breach arose from an improper liaison with the plaintiff's spouse or because one effect of the alleged breach or tortious conduct was a disruption or breakup of his or her marriage.... What is precluded, however, is the refitting of the abolished actions into other forms. One *473 cannot sue to recover for injuries arising from `defilement of the marriage bed' or from an interference with the marriage by simply casting the defendant's conduct as a breach of contract, or negligence, or some other intentional tort."
90 Md.App. at 7-8, 599 A.2d at 1196 (quoting Gasper v. Lighthouse, Inc., 73 Md.App. 367, 533 A.2d 1358 (1987), cert. denied 311 Md. 718, 537 A.2d 272 (1988)). See, also, Destefano v. Grabrian, 763 P.2d 275 (Colo. 1988); Harrington by and through Harrington v. Pages, 440 So.2d 521 (Fla.App. 1983); Lund v. Caple, 100 Wash.2d 739, 675 P.2d 226 (1984); Lien v. Barnett, 58 Wash.App. 680, 794 P.2d 865 (1990); Weaver v. Union Carbide Corp., 180 W.Va. 556, 378 S.E.2d 105 (1989).
We wish to make clear that even if Carlson had succeeded in pleading that a misrepresentation took place, he still would not have pled damages that are cognizable under Nebraska law. Accordingly, the order sustaining a demurrer to this count is affirmed.
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
For his second theory of recovery, Carlson alleged intentional infliction of emotional distress.
The Nebraska Supreme Court set forth the elements of intentional infliction of emotional distress in Dale v. Thomas Funeral Home, 237 Neb. 528, 531, 466 N.W.2d 805, 807-08 (1991), as follows:
The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant's intentional or reckless conduct (2) which is so outrageous and so extreme that the conduct goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community and (3) which causes emotional distress so severe that no reasonable person is expected to endure that severe emotional distress.
For the purposes of this appeal, we assume the basic fact that Chain had a sexual relationship with Carlson's wife. We also assume that Sandra Sue Carlson suffered from PTSD. The question on appeal is whether Carlson has pled a cause of action to support recovery under a theory of intentional infliction of emotional distress.
We first focus our analysis on the element of outrageousness. The Supreme Court has stated that the conduct necessary to support a claim must be " `so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.'" Hassing v. Wortman, 214 Neb. 154, 156-57, 333 N.W.2d 765, 767 (1983) (quoting Paasch v. Brown, 193 Neb. 368, 227 N.W.2d 402 (1975)). " `[T]he conduct necessary to support such a claim [must exceed] "that which a reasonable person could be expected to endure." ' " Hassing v. Wortman, 214 Neb. at 157, 333 N.W.2d at 767 (quoting Davis v. Texaco, Inc., 210 Neb. 67, 313 N.W.2d 221 (1981)).
We will assume that the alleged conduct was outrageous as to Sandra Sue Carlson. Even so, the facts pled do not sustain the conclusion that Chain's course of conduct was outrageous as to Carlson. "[T]he essence of the requirement [that the conduct be outrageous] is that the conduct must not simply be extreme and outrageous from the perspective of society at large, or from the perspective of someone else, but must be so as to the plaintiff." Homer v. Long, 90 Md.App. 1, 12, 599 A.2d 1193, 1198, cert. denied 326 Md. 177, 604 A.2d 444 (1992).
While the first defect might in itself be fatal, we also note that Carlson has not alleged that he was present when the alleged harassment occurred. The elements of intentional or reckless infliction of emotional distress as stated in the Restatement (Second) of Torts § 46 at 71-72 (1965) are:
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress....
(2) Where such conduct is directed at a third person, the actor is subject to liability *474 if he intentionally or recklessly causes severe emotional distress
(a) to a member of such person's immediate family who is present at the time....
(Emphasis supplied.) Cf. the Restatement, supra at comment l. at 79. The fatal flaw of Carlson's theory of recovery is that he nowhere alleges that he was present when the alleged harassment took place, and Carlson alleges that he only learned of it in July 1990, 1 month after such conduct ceased. Other jurisdictions have held that presence is a crucial element of a claim for outrage when it is directed at a third person. See, H.L.O. by L.E.O. v. Hossle, 381 N.W.2d 641 (Iowa 1986) (parents not present at the time of the defendant's tortious acts may not recover for emotional distress caused by neighbor's sexual abuse of their children); Homer v. Long, supra; Miller v. Cook, 87 Mich.App. 6, 273 N.W.2d 567 (1978) (plaintiffs not present when child was beaten may not recover); Calliari v. Sugar, 180 N.J.Super. 423, 435 A.2d 139 (1980) (purchasers of real property may not recover for emotional distress resulting from discovery of body of vendor's wife buried in backyard); Lund v. Caple, 100 Wash.2d 739, 675 P.2d 226 (1984). See, also, Nancy P. v. D'Amato, 401 Mass. 516, 517 N.E.2d 824 (1988) (discussing, but not deciding issue); W. Page Keeton, Prosser and Keeton on the Law of Torts § 12 (5th ed. 1984). But cf. Haselhorst v. State, 240 Neb. 891, 485 N.W.2d 180 (1992).
Finally, the averments in Carlson's pleading in support of recovery for intentional infliction of emotional distress rely on the same facts which are pled to support recovery for fraudulent misrepresentation. To the extent that this theory of recovery is merely a refitting of the action for alienation of affections, it would not be cognizable under Nebraska law. See, Homer v. Long, supra; Strock v. Pressnell, 38 Ohio St.3d 207, 527 N.E.2d 1235 (1988).
We conclude that Carlson has not pled a cause of action to support recovery under a theory of intentional infliction of emotional distress. Accordingly, the order sustaining a demurrer to this theory of recovery is affirmed.
INVASION OF PRIVACY AND FALSE LIGHT
In his second amended petition, Carlson claimed that he was entitled to recover on the basis of Neb.Rev.Stat. § 20-203 (Reissue 1991), which provides: "Any person, firm, or corporation that trespasses or intrudes upon any natural person in his or her place of solitude or seclusion, if the intrusion would be highly offensive to a reasonable person, shall be liable for invasion of privacy." Carlson also based recovery on Neb.Rev.Stat. § 20-204 (Reissue 1991), which provides:
Any person, firm, or corporation which gives publicity to a matter concerning a natural person that places that person before the public in a false light is subject to liability for invasion of privacy, if:
(1) The false light in which the other was placed would be highly offensive to a reasonable person; and
(2) The actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
We assume for purposes of this appeal that the basic facts are that in June 1990, Chain published information to the Gering State Bank to the effect that Carlson was guilty of embezzlement. For our legal analysis, we also assume as true that in July 1990, Carlson was informed of Chain's remarks to Gering State Bank.
Neb.Rev.Stat. § 20-211 (Reissue 1991) provides that an action for invasion of privacy must be brought within 1 year. Carlson alleged that the statements were made to the bank in June 1990. The action was filed July 19, 1991. Carlson's cause of action for invasion of privacy and false light was therefore barred by the 1-year statute of limitations. Carlson argues that the statute of limitations does not apply because Chain's general conduct was fraud of such a character as to conceal itself. Carlson relies on the rule that when a defendant fraudulently *475 conceals the fact that a cause of action has accrued against him, the statute of limitations is suspended until the plaintiff discovers his right to the cause of action. See Muller v. Thaut, 230 Neb. 244, 430 N.W.2d 884 (1988).
As we stated above, the facts alleged to support recovery on the theory of invasion of privacy and false light constitute a cause of action separate and distinct from that of fraudulent misrepresentation. More importantly, however, Carlson has not alleged that Chain took affirmative action to conceal his publication of the allegedly false information concerning Carlson to Gering State Bank. Nor has Carlson alleged that Chain was under a duty to disclose such publication.
Accordingly, the action was barred by the statute of limitations, and the order sustaining a demurrer to this cause of action is affirmed.
DISMISSAL
Finally, Carlson argues that the court erred by dismissing his cause of action. As this court stated in Mangimelli v. N.P. Dodge Co., 1 NCA 535, 1992 WL 132295 (1992), it is not an abuse of a court's discretion to deny leave to replead where there is no reasonable probability that the pleader can remedy the defect. We find no abuse of discretion and therefore affirm the trial court's dismissal of the action.
The judgment of the district court is affirmed.
AFFIRMED.