159 P.3d 453 (2007)
Harvey S. VISSER, a single man, and Sharon M. Snedeker, a single woman, Respondents,
v.
Ralph CRAIG and Rae Craig, husband and wife, and Thong Trinh and Nag Trinh, husband and wife, Appellants.
No. 34610-9-II.
Court of Appeals of Washington, Division 2.
June 5, 2007.
Bradley W. Andersen, Vancouver, WA, for Petitioner.
Le Anne Marie Bremer, Miller Nash LLP, Vancouver, WA, for Respondent.
VAN DEREN, J.
¶ 1 Ralph and Rae Craig seek review of the trial court's order on summary judgment granting an easement by necessity to Harvey S. Visser and Sharon M. Snedeker. The Craigs contend that the trial court erred in concluding that (1) the Craigs created a landlocked parcel of property when they conveyed 13 acres to their neighbors, Kenneth *455 and Janice Westhusing, in 1999; (2) no legal access existed through a private road easement purporting to grant access to the conveyed 13 acres; and (3) a boundary line adjustment avoids the creation of an easement by necessity. They also argue that the trial court erred in denying their summary judgment motion. Because numerous issues of material fact must be resolved, we reverse and remand for trial.

FACTS
¶ 2 In 1999 the Craigs owned two adjoining agricultural parcels located in Clark County. The two parcels, Tax Lots 3 and 5, totaled approximately 110 acres and both lots had access to a public road.
¶ 3 The Joan D. Westhusing Trust (Trust) owned Tax Lot 58, a parcel adjoining the northwest boundary of the Craigs' property. Harvey and Patti Goodling, husband and wife, owned Tax Lot 4, 19, a parcel adjoining the northeast boundary of the Craigs' property. Kenneth Westhusing, trustee of the Trust, is Patti Goodling's brother. Tax Lots 58 and 4, 19 are accessible by Nichols Hill Road by way of an easement of uncertain scope and limitation serving a number of properties.
¶ 4 In 1999 the Craigs conveyed 13 acres of their property to the Trust. The Westhusings and the Goodlings wanted the 13 acres for pasture land and to protect their views. As part of the transaction, the Westhusings and the Goodlings granted the Craigs a 20-foot wide easement over their existing property and the 13 acre parcel, so that the Craigs could access Nichols Hill Road. Kenneth Westhusing conveyed an undivided one-half interest in the 13 acres to the Goodlings the following year.
¶ 5 Kenneth Westhusing and Janice Caday divorced in 2003 and, as part of the dissolution, Lot 58 vested solely in Janice Caday. Harvey and Patti Goodling also divorced and title to Lot 4, 19 vested solely in Harvey Goodling. As a result of the division of property in the dissolution actions, Kenneth Westhusing and Patti Goodling (now Patti Westhusing) each owned an undivided one-half interest in the 13 acres by 2004.
¶ 6 In December 2004, Visser and Snedeker[1] loaned money to Kenneth and Patti Westhusing and secured the obligation with a deed of trust recorded against the 13 acres. Visser also acquired an option to purchase the 13 acres. Because Visser was planning to build a single-family residence on the 13 acres, he attempted to obtain an owner's title insurance policy. But the title insurance commitment listed the following exception:
Loss or damage by reason that there appears to exist no insurable right of access to and from the land herein described to a public right-of-way. Unless this matter is solved to the satisfaction of the company, the forthcoming policy/endorsement will contain an exception to coverage for loss or damage by reason of lack of right of access to and from the land.
Clerk's Papers (CP) at 139.
¶ 7 In January 2005 Visser sued the Craigs for (1) an easement by necessity, (2) an implied easement, or (3) condemnation for private way of necessity. The exact location of any such easement is not contained in the record before us. The Craigs filed a counterclaim.[2]
¶ 8 Visser moved for partial summary judgment, contending that the Craigs' conveyance of the 13 acres to the Westhusings created an easement by necessity because the 13 acres became landlocked. The Craigs filed a cross-motion for summary judgment, contending in part that they did not intend to grant an easement over their property in 1999.
¶ 9 The trial court granted Visser's summary judgment motion and denied the Craigs' cross-motion. It ruled,
An easement by necessity is implied in a grant of land under circumstances where the grantee is left without access, regardless of the intent of the parties. Maybe, if *456 both parties expressly agree, and the conveying instrument so provides, a conveyance can be structured to expressly land lock a parcel, despite the public policy against it, but that is not the case here.
CP at 224.
¶ 10 The Craigs moved for reconsideration and the trial court denied it, ruling in part:
While it is true that the parties discussed, and perhaps intended a boundary line adjustment, the legal description utilized in the Statutory Warranty Deed conveying the 13 acres clearly and unequivocally conveys a finite, closed parcel.
CP at 287.
[The Craigs'] argument that [Visser's] predecessor, rather than [the Craigs] caused the 13 acres to become landlocked is incorrect. The argument is premised upon the contention that legal access to the 13 acres was available when the conveyance occurred in 1999, because the 13 acres was easily accessed from the northerly parcel, Tax Lot 58. [The Craigs] confuse "legal" access with "access." Nichols Hill Road is a private easement across several subservient properties, allowing access to Tax Lot 58, the dominant parcel. Expansion of the domina[nt] parcel, to allow access to land not originally benefited by the easement, is a misuse of the easement. Brown v. Voss, 105 Wash.2d 366, 715 P.2d 514 (1986).
Furthermore, my conclusion is that, even if the 13 acres were acquired by boundary adjustment as opposed to separate conveyance, the principle of Brown v. Voss would apply.
CP at 289-90. The Craigs appealed and we accepted discretionary review of the trial court's rulings. RAP 2.3(b)(4).[3]

ANALYSIS
I. STANDARD OF REVIEW
¶ 11 In reviewing a grant of summary judgment, "we must engage in the same inquiry as the trial court." Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Marincovich v. Tarabochia, 114 Wash.2d 271, 274, 787 P.2d 562 (1990).
¶ 12 When examining an order on summary judgment, we, like the trial court, "consider the evidence and the reasonable inferences therefrom in a light most favorable to the nonmoving party." Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995). A nonmoving party, however, "may not rely on speculation or on argumentative assertions that unresolved factual issues remain." Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wash.2d 1, 13, 721 P.2d 1 (1986). "After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact." Meyer v. Univ. of Washington, 105 Wash.2d 847, 852, 719 P.2d 98 (1986). Where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. LaMon v. Butler, 112 Wash.2d 193, 199, 770 P.2d 1027 (1989).
II. EASEMENT BY NECESSITY
A. Material Issues of Fact
¶ 13 The Craigs assign error to the trial court's ruling granting an easement by necessity on summary judgment.[4] They contend *457 that they did not create a landlocked property when they conveyed the 13 acres to Westhusing. The Craigs assert that the 13 acres became landlocked when Westhusing and Caday divorced and subsequently conveyed the property to Visser. In response, Visser argues that the Craigs' 1999 conveyance turned the 13 acres into landlocked property with no access to a public street or road.
¶ 14 An easement implied from necessity arises where a grantor conveys part of her land, retains part and, after the conveyance, it is necessary to cross the grantor's parcel to reach a street or road from the conveyed parcel. Hellberg v. Coffin Sheep Co., 66 Wash.2d 664, 667-68, 404 P.2d 770 (1965); Granite Beach Holdings, L.L.C. v. Dep't of Natural Resources, 103 Wash.App. 186, 196, 11 P.3d 847 (2000). "Necessity must exist at the date the common parcel is severed." Granite Beach, 103 Wash.App. at 196, 11 P.3d 847. "Unity of title and subsequent separation are absolute requirements for implied easement; the elements of . . . necessity are merely aids in determining intent to create an implied easement." Roberts v. Smith, 41 Wash.App. 861, 865, 707 P.2d 143 (1985). "The intent to create an access easement over the grantor's land is implied when a grantor sells landlocked property." Roberts, 41 Wash.App. at 865, 707 P.2d 143. "An easement of necessity is an expression of a public policy that will not permit property to be landlocked and rendered useless." Hellberg, 66 Wash.2d at 666, 404 P.2d 770.
¶ 15 Here, the trial court ruled that the 13 acres became landlocked when the Craigs conveyed it to the Westhusings in July 1999. To reach this conclusion, the trial court distinguished "legal" access from mere "access" and stated that the 13 acres did not have any "`legal' access" at the time of this conveyance. CP at 289. Relying on Brown v. Voss, 105 Wash.2d 366, 715 P.2d 514 (1986), it ruled that Nichols Hill Road, the private road easement that provides access to Lots 58 and 4, 19, did not provide legal access to the conveyed property because "[e]xpansion of the domina[nt] parcel, to allow access to land not originally benefited by the easement, is a misuse of the easement." CP at 289-90.
¶ 16 But issues of material fact remain unresolved, and the trial court erred in granting summary judgment on the record before us. In Voss, our Supreme Court declined to grant plaintiffs an easement in connection with their ownership of a parcel that was not part of the original dominant estate under the terms of an easement created by express grant. 105 Wash.2d at 371, 715 P.2d 514. The Voss court stated: "As a general rule, an easement appurtenant to one parcel of land may not be extended by the owner of the dominant estate to other parcels owned by him, whether adjoining or distinct tracts, to which the easement is not appurtenant." 105 Wash.2d at 371, 715 P.2d 514. But this is only a "general rule" because, as the Voss court explained, "the extent of the right acquired is to be determined from the terms of the grant properly construed to give effect to the intention of the parties." 105 Wash.2d at 371, 715 P.2d 514. In other words, the Voss court did not allow an easement to extend to property that was not part of the original dominant estate because the terms of the easement did not provide for such a possibility. 105 Wash.2d at 371, 715 P.2d 514.
¶ 17 The record is clear that the Westhusings, the Goodlings, and the Craigs all understood and relied on the fact that, even though it is a private road, use of Nichols Hill Road could be expanded in 1999. The Westhusings and Goodlings granted the Craigs access to Nichols Hill Road in 1999 as a part of the purchase and sale agreement for the 13 acres. Visser erroneously asserts, "[i]f the Craigs felt that the terms of the easement allowed the Westhusings to unilaterally expand the dominant estate of the Nichols Hill Road easement, the burden was theirs to raise that argument with the trial court and to submit evidence supporting it." Br. of Resp't at 20.
¶ 18 The burden was actually Visser's to demonstrate that the Nichols Hill Road did not provide access for the 13 acres. See Roberts, 41 Wash.App. at 864, 707 P.2d 143 (noting that plaintiffs are charged with proving necessity and the burden of proof includes *458 proof that no access exists).[5] Furthermore, we note that the Craigs have met their burden because access to Nichols Hill Road was, in fact, expanded when they acquired an easement across both the 13 acres and the Goodlings' property from the Westhusings and the Goodlings in 1999. And the Craigs had no reason to believe that their easement across the 13 acres and the Goodlings' property was void, voidable, or not legal access.
¶ 19 Genuine issues of material fact remain regarding the type, scope, or terms of the Nichols Hill Road access and the ability to expand its use in 1999. It is unclear from the record whether the Westhusings had legal access from Nichols Hill Road to the 13 acres and whether the Goodlings conveyed legal access to the Craigs across the 13 acre parcel from Nichols Hill Road in 1999. If necessity did not exist when the Craigs conveyed to the Westhusings, the Westhusings and the Goodlings, and not the Craigs, landlocked the 13 acres by severing it from Lots 58 and 4, 19 and conveying it to Visser in 2004. Or, if the Craigs' easement was valid and enforceable against Goodlings in 1999, the Goodlings landlocked the 13 acres by not conveying the easement to Visser.
¶ 20 Furthermore, neither the record nor oral argument reveal whether Visser is seeking to impose an easement against property the Craigs no longer own (the Trinh property) and neither party discusses or cites authority delineating the right to impose an easement by necessity years after the complained-of conveyance against innocent third parties.
¶ 21 Moreover, the use of an easement implied from prior use is a question of fact and depends on the parties' intent, the nature of the properties, and the manner in which the parties used the easement. Thompson v. Smith, 59 Wash.2d 397, 408, 367 P.2d 798 (1962); Evich v. Kovacevich, 33 Wash.2d 151, 157, 204 P.2d 839 (1949). We have no evidence in the record before us about the usage of the Craigs' easement across the 13 acres and the Goodlings' property since 1999. And it appears that the Westhusings enjoyed the 13 acres for over five years without complaining of the necessity to have access to SE Moffet Road, the public road on the south side of the Craig and Trinh properties.[6]
¶ 22 Considering the evidence and the reasonable inferences from it in the light most favorable to the Craigs, the trial court improperly concluded that Nichols Hill Road does not now, nor did it in the past, provide legal access to the 13 acres and left complicated and material issues of fact unresolved.
¶ 23 We note that the factual circumstances here differ from those reported in Washington cases creating an easement by necessity. In granting review, our Commissioner noted,
None of the cases finding or upholding the existence of an easement by necessity concerned property purchased for specified uses that would not require an easement. No court has considered whether the intent of the purchaser can affect the right to an easement.
Commissioner's Ruling Granting Review (June 23, 2006) at 3.
*459 ¶ 24 Moreover, the differences in this matter go beyond the parties' intent: (1) the only easement granted in the original transfer between the Craigs and the Westhusings was to the Craigs across the Westhusings' and the Goodlings' land, showing that both parties were fully capable of including an easement to the Westhusings if they so desired; (2) the Westhusings did not need or request an easement at the time of purchase; (3) the only evidence before the trial court that the property does not have legal access is a title insurance statement of intended exception to insuring access; (4) the Westhusings' purchaser (Visser) seeks to establish an easement by necessity but fails to specify where such access should lie, and the record reflects that the Craigs may have sold the property over which Visser claims an easement; and (5) no evidence shows that an easement is or was feasible over lands the Craigs retained in 1999 or as now owned.
¶ 25 Because these and other genuine issues of material fact remain, summary judgment was inappropriate, and we remand the entire matter for trial.
B. Parties' Intent
¶ 26 Finally, in challenging the trial court's denial of their summary judgment motion, the Craigs claim that the parties' actual intent to not create an easement over the Craigs' property to SE Moffet Road should foreclose the doctrine of easement by necessity.
¶ 27 According to the Craigs: "[T]he Craigs (the grantors) and the Westhusings (grantees) specifically addressed the issue of easements and agreed that the Craigs would not be burdened with an easement across their property to provide access to the 13 acres." Br. of Appellant at 14-15. Visser responds that "easements by necessity and easements implied from prior use are distinct legal creatures and[,] contrary to the Craigs' argument, the parties' intent is not a consideration in determining whether a conveyance of a legally landlocked property created an easement by necessity." Br. of Resp't at 7. Relying heavily on Hellberg, Visser asserts that "easements by necessity do not require an analysis of the parties' intent; rather, they arise by operation of law and public policy." Br. of Resp't at 9.
¶ 28 Our Supreme Court noted that an easement of necessity and an implied easement appurtenant to the land are both easements that arise by implication and explained the easement of necessity doctrine:
An easement of necessity is an expression of a public policy that will not permit property to be landlocked and rendered useless. In furtherance of that public policy, we give the owner, or one entitled to the beneficial use of landlocked property, the right to condemn a private way of necessity for ingress and egress. RCW 8.24.010.
Condemnation, however, is not necessary where the private way of necessity is over the land of the grantor or lessor of the landlocked property.
The theory of the common law is that where land is sold (or leased) that has no outlet, the vendor (or lessor) by implication of law grants ingress and egress over the parcel to which he retains ownership, enabling the purchaser (or lessee) to have access to his property. State ex rel. Mountain Timber Co. v. Superior Court, 77 Wash. 585, 588, 137 P. 994 (1914).
Under the findings of the trial court, Hellberg has no access from his leased land to any highway except over the land of Coffin, the lessor, by way of the old Coffin road. The right of the landlocked tenant to ingress and egress over his lessor's property cannot be gainsaid.
Hellberg, 66 Wash.2d at 666-67, 404 P.2d 770. It then analyzed "easements by implication as appurtenances to land," or easements implied from prior use, stating, "[w]e are concerned in such cases with the presumed intention of the parties as disclosed by the extent and character of the user, the nature of the property, and the relation of the separated parts to each other." Hellberg, 66 Wash.2d at 667-68, 404 P.2d 770. Although the Hellberg court analyzed both doctrines, it did not specify which it relied on in granting an easement to the plaintiff. 66 Wash.2d at 668-69, 404 P.2d 770.
¶ 29 Most jurisdictions do not allow an easement by necessity to arise if there is *460 clear evidence of the parties' contrary intent,[7] and the majority view on easements by necessity, which originated from the common law, militates against the conclusion that an easement by necessity can be imposed despite the parties' contrary intent.
¶ 30 Here, the Craigs claim that the parties "agreed that the Craigs would not be burdened with an easement across their property to provide access to the 13 acres." Br. of App. 14-15. The Craigs' evidence of the parties' intent includes: (1) their real estate agent's affidavit that the parties agreed that the sale would be handled as a boundary line adjustment, not as a transfer of a separate parcel, (2) the affidavit of a Clark County prosecuting attorney stating that (a) a deed by itself cannot create a separate parcel, but a boundary line adjustment can be made by simply recording a deed, and that (b) the county assessor's office can issue a tax parcel number whether or not the property is conveyed as a separate legal parcel, and (3) Ralph Craig's affidavit stating that, "[h]ad we intended to grant Westhusings an easement over our property, we would have so provided in our deed," CP at 171.
¶ 31 We found no case stating that an easement by necessity can arise only if the parties convey property as a separate parcel. Moreover, as the trial court noted, there is no direct evidence that the parties expressly agreed to exclude an easement by necessity. Thus, viewing the evidence in a light most favorable to Visser, the nonmoving party, the trial court properly denied the Craigs' cross-motion for summary judgment, leaving the issue for the fact-finder to resolve.[8]
¶ 32 We reverse the trial court's grant of Visser's summary judgment motion, affirm its denial of the Craigs' cross-motion for summary judgment, and remand for a trial.
We concur: PENOYAR, J., and CASEY, J. Pro Tem.
NOTES
[1] To avoid confusion, we will refer to the respondents (Visser, Snedeker and the Trinhs) together as Visser.
[2] The parties agreed to join Thong and Nga Trinh as defendants because the Craigs conveyed one of their two parcels to the Trinhs.
[3] [D]iscretionary review may be accepted only in the following circumstances:

. . . .
The superior court has certified, or that all parties to the litigation have stipulated, that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate determination of litigation.
RAP 2.3(b)(4).
[4] The Craigs also assign error to the trial court's denial of their cross-motion for summary judgment.
[5] The Craigs also argue that Voss does not apply here because they conveyed the 13 acres through a boundary line adjustment rather than as a separate parcel. According to the Craigs, a conveyance by a boundary line adjustment involves only one enlarged parcel of land affecting an easement whereas Voss concerned two or three separate parcels. But Visser is correct in pointing out that the court concluded in Voss that an owner of a dominant estate could not extend an easement to other parcels, whether adjoining or distinct, to which the easement is not appurtenant. 105 Wash.2d at 371, 715 P.2d 514. Notably, however, the Craigs' argument that the conveyance was through a boundary line adjustment may be a factor to consider, along with the scope and terms of the Nichols Hill Road's use, in determining whether the Westhusings and Goodlings had provided legal access to the 13 acres and to the Craigs.
[6] Visser's title insurance commitment states: "there appears to exist no [i]nsurable right of access to and from the land herein described to a public right-of-way." CP at 139. But this is not conclusive evidence of whether the Nichols Hill Road provided legal access to the 13 acres when the Craigs sold it to the Westhusing Trust, or whether the Goodlings extinguished legal access or an easement based on prior use over their property, thereby landlocking the 13 acres.
[7] See, e.g., MacCaskill v. Ebbert, 112 Idaho 1115, 739 P.2d 414, 418 (1987) ("When each element is proven, an easement by necessity will be recognized unless a countershowing is made that such an easement has been explicitly bargained away by the parties or their predecessors."); Jackson v. Nash, 109 Nev. 1202, 866 P.2d 262, 269 (1993) ("An easement by necessity will not be imposed contrary to the actual intent of the original grantor and original grantee."); Hurlocker v. Medina, 118 N.M. 30, 878 P.2d 348, 352 (1994) ("Therefore, the implied intention of the parties is a more reliable foundation than public policy upon which to build the analytical framework necessary to sustain easements by necessity; it is only when the record provides absolutely no insight from which an inference as to the intent of the parties can be drawn that public policy is employed as a significant factor."); Kellogg v. Garcia, 102 Cal.App.4th 796, 125 Cal. Rptr.2d 817, 823 (2002) (An easement by necessity will not be imposed contrary to the express intent of the parties because the necessity is based on an inferred intent.); Luthy v. Keehner, 90 Ill.App.3d 127, 45 Ill.Dec. 509, 412 N.E.2d 1091, 1094 (1980) ("Because the intent of the parties is essential in determining whether an easement by way of necessity was created over the [defendants'] property at the time of the conveyance, and the court is not precluded from considering evidence of his intent, we find that the defendants have raised a genuine question of material fact sufficient to resist the plaintiffs' motion for summary judgment.").
[8] The Craigs also assert that the trial court's ruling interfered their freedom to contract, violated the statute of frauds, and constituted a "taking." Br. of Appellant at 28. Because the Craigs raise these issues for the first time on appeal and because the freedom to contract and the taking assertions are not supported by argument and legal authority, we need not address them on appeal. RAP 2.5(a) and 10.3(a); Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wash.2d 738, 750, 863 P.2d 535 (1993); ITT Rayonier, Inc., v. Dalman, 122 Wash.2d 801, 803 n. 2, 863 P.2d 64 (1993).