# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| R.M., individually,<br><br>　　　　　　Respondent,<br><br>　　　v.<br><br>KING COUNTY, a political subdivision<br>of the State of Washington,<br><br>　　　　　　Appellant. | No. 84903-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — R.M. sued King County for negligence and outrage. The trial court granted summary judgment for the County dismissing the negligence claim but denied summary judgment on the outrage claim. We granted discretionary review to consider the County's argument that R.M.'s claim of outrage is barred as a matter of law. We agree and reverse.

I

The facts of the case are largely uncontested. In 1993, when R.M. was 16 years old, she was introduced to Michael Landry and Rochelle King. R.M. moved into their home in Bellevue to work as a nanny for Landry and King's children. During the same

timeframe, Landry and King were operating a prostitution ring. As part of their enterprise, Landry and King operated a massage parlor—The Golden Touch.

From 1992 to 1994, the King County Sheriff's Office Vice Unit was investigating Landry and King. In December 1993, King County Detective Jon Holland was assigned to the investigation. Other law enforcement agencies were investigating Landry and King's various prostitution enterprises.

As early as December 1993, Detective Holland had information that minors were involved in the operations. In February 1994, Holland interviewed a witness forced to perform sex work by Landry at 14 years old.

Shortly after R.M. began nannying for Landry and King, Landry began sexually assaulting R.M. R.M. was also forced to work in the massage parlor and she was trafficked repeatedly through Landry and King's escort service.

While working in the massage parlor, R.M. recalled at least two encounters with unidentified police officers. Once she was asked for identification (ID). R.M. was not allowed to carry an ID and, at some point, her ID was taken from her by King. R.M. recalled lying and telling the officer she was 18. She was unable to ask for help. On another occasion, R.M. recalled King telling her that a massage customer was an undercover police officer. The customer was in plainclothes. R.M. gave him a normal massage. He did not ask R.M. her age or for other services, and R.M. did not ask for help.

Law enforcement learned the address of Landry and King's home in Bellevue as early as February 1993. While law enforcement did receive a tip that a vulnerable

victim, not R.M., might be living with Landry, they did not receive information that a minor was being held captive in the home.[1]

Sometime in late winter or early spring 1994, R.M. escaped from Landry and King's home.

In July 1994, R.M. gave a written statement to Detective Holland and disclosed working through Landry's escort service and in the massage parlor. Detective Holland's contemporaneous follow-up report on the investigation described the interaction as follows:

> 07-26-94 1845 – I took a written statement from [R.M.] She is a juvenile who [says] that she went on about 300 dates while being employed by Landry/King. The dates were escort call outs and "servicing" clients which came into the massage parlor. She said in her statement that Landry/King trained her in the operation of escort services and massage parlors.

This is the first mention of R.M. in the investigation records.

The investigation was completed in 1994 and Landry and King pleaded guilty to six counts of promoting prostitution. Landry and King were charged with promoting the prostitution of R.M. from October 1, 1993 through February 28, 1994.

In 2022, R.M. sued the County asserting claims of negligence and outrage. The County moved for summary judgment and sought dismissal of R.M.'s claims.

The County also moved to strike portions of R.M.'s response to summary judgment. The trial court granted the motion to strike in part.[2]

---

[1] While a parent provided the information to law enforcement, it is unclear from the record if this victim was a minor or a vulnerable adult.

[2] The brief of respondent references the stricken evidence but does not assign error to the trial court's decision as required by RAP 2.4(a). Thus, because the trial court did not rely on portions of these documents, this opinion will not rely on them.

The trial court granted the County's motion for summary judgment in part and denied it in part. The trial court found that the negligence claim failed as a matter of law and dismissed the claim. The trial court explained:

> There exists no claim for negligent investigation in Washington. Under the Public Duty Doctrine, a government entity, including law enforcement, is not liable for its negligent conduct unless it has a specific duty that is owed to the injured person in particular and separate from the general duty owed to the public to enforce laws. The Court finds as a matter of law that none of the four exceptions to the public duty doctrine apply in this case. The Court further finds that there is no evidence of any affirmative misfeasance that would create a duty to act under § 302B of the Restatement of Torts. Therefore, King County owed no duty.

But the trial court found "there remain issues of material fact that make summary judgment improper as to the claim of outrage and the statute of limitations."

The County unsuccessfully moved for reconsideration. The County moved for discretionary review, which was granted by a commissioner of this court. The trial court proceedings have been stayed pending the outcome of this appeal.[3]

II

The County challenges the trial court's denial of the County's summary judgment motion to dismiss R.M.'s claim of outrage. The County asserts that R.M.'s claim of outrage is legally insufficient because it is not based on affirmative misfeasance and cannot be considered extreme and outrageous as a matter of law. We agree.

We review summary judgment orders de novo, considering the evidence and all reasonable inferences in the light most favorable to the nonmoving party. Keck v.

---

[3] R.M. asks this court to review the dismissal of her negligence claim. But R.M. did not file a motion for discretionary review under RAP 2.4(a) or seek cross review under RAP 5.1(d). We decline to consider R.M.'s arguments on the negligence claim. This does not preclude R.M. from appealing the dismissal once it becomes a final order. RAP 2.2(a).

Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate "if the pleadings, affidavits, and depositions before the trial court establish that there is no genuine issue of material fact and that as a matter of law the moving party is entitled to judgment." Ruff v. County of King, 125 Wn.2d 697, 703, 887 P.2d 886 (1995); CR 56(c). The burden is on the moving party to demonstrate there is no genuine issue of material fact. Woodward v. Lopez, 174 Wn. App. 460, 468, 300 P.3d 417 (2013). On summary judgment, questions of fact may be determined as a matter of law "when reasonable minds could reach but one conclusion." Ruff, 125 Wn.2d at 703-04 (quoting Hartley v. State, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)).

"'After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact.'" Woodward, 174 Wn. App. at 468 (internal quotation marks omitted) (quoting Visser v. Craig, 139 Wn. App. 152, 158, 159 P.3d 453 (2007)). But "a nonmoving party 'may not rely on speculation [or on] argumentative assertions that unresolved factual issues remain.'" Woodward, 174 Wn. App. at 468 (quoting Visser, 139 Wn. App. at 158).

To prevail on a claim for outrage, a plaintiff must prove three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff. Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 792, 336 P.3d 1142 (2014). "The first element requires proof that the conduct was 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Robel v. Roundup Corp.,

148 Wn.2d 35, 51, 59 P.3d 611 (2002) (citing <u>Dicomes v. State</u>, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989)).  Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not impose liability.  <u>Spicer v. Patnode</u>, 9 Wn. App. 2d 283, 296, 443 P.3d 801 (2019).  But where reasonable minds can differ as to whether the conduct rises to an outrageous level, a jury is entitled to determine the issue.  <u>Robel</u>, 148 Wn.2d at 51.

The County first asserts that R.M.'s outrage claim cannot be based on conduct toward a separate individual who filed a separate lawsuit.

In <u>Lund v. Caple</u>, 100 Wn.2d 739, 741, 675 P.2d 226 (1984), our Supreme Court affirmed the summary judgment dismissal of a claim of outrage against a pastor who had a sexual relationship with the appellant's wife.  The <u>Lund</u> court explained, "[t]he fatal flaw in appellant's outrage theory is that he was not present when the alleged outrageous conduct occurred, and did not even learn of the conduct until several months later.  Since appellant was not present, he has not established the tort of outrage."  100 Wn.2d at 742.  "[P]resence is a crucial element of a claim for outrage when the conduct is directed at a third person."  <u>Lund</u>, 100 Wn.2d at 742 (citing RESTATEMENT (SECOND) OF TORTS § 46(2)(a) (1965)); <u>see also</u> <u>Reid v. Pierce County</u>, 136 Wn.2d 195, 203-04, 961 P.2d 333 (AM. L. INST. 1998) (affirming summary judgment dismissal of claim of outrage because plaintiffs were not present when the conduct occurred).

R.M.'s opposition to summary judgment stated, "[d]uring M.T.'s lawsuit, two superior court judges agreed that these facts, leaving children as bait in a sex trafficking scheme to enhance convictions, was outrageous.  The result should be no different in

this case." And on appeal, R.M. asserts that the outrageous conduct directed at M.T. "was identical to the nature of the outrageous conduct directed at R.M."

But M.T. had a strikingly different interaction with law enforcement than R.M. During his investigation, Detective Holland was asked for a ride by M.T. and drove her to the Golden Touch. In the interaction, Detective Holland did not identify himself as law enforcement. M.T. asked Detective Holland if he knew what went on in the massage parlor. Detective Holland told M.T. that she would be forced to perform sex acts at the massage parlor. M.T. was crying and scared and then told Detective Holland that she was 17. Detective Holland dropped M.T. off at the Golden Touch and later sent officers to get her name. R.M. believes she was present when two law enforcement officers arrived at the massage parlor later that day, but she was not present in Detective Holland's car with M.T.

Thus, M.T. had a direct interaction with law enforcement during their investigation, and, unlike R.M., M.T.'s name and age were known to law enforcement. Because R.M. was not present in the vehicle, the statements and conduct of Detective Holland to M.T. cannot form the basis of R.M.'s outrage claim.

This alone warranted summary judgment for the County. The County makes several additional arguments.

The County next argues that nonfeasance cannot establish extreme and outrageous conduct. R.M. asserts that the misfeasance versus nonfeasance distinction only applies to determine if a duty of care is owed and should not apply to this outrage claim.

Misfeasance involves active misconduct resulting in positive injury to others and "necessarily entails the creation of a new risk of harm to the plaintiff." Robb v. City of Seattle, 176 Wn.2d 427, 473, 295 P.3d 212 (2013). On the other hand, nonfeasance is a "passive inaction or failure to take steps to protect others from harm." Robb, 176 Wn.2d at 437 (quoting Lewis v. Krussel, 101 Wn. App. 178, 184, 2 P.3d 486 (2000)). In Robb, the court held that the duty to prevent a third party's criminal act may only arise absent a special relationship where the actor's conduct constitutes misfeasance. 176 Wn.2d at 439.

According to the County, R.M.'s argument that it was extreme and outrageous for the detectives to fail to act given the knowledge they had of Landry's operation is not based on "conduct." And that R.M. cites no case where inaction was found to establish the tort of outrage. In contrast, R.M. asserts the allegedly extreme and outrageous "conduct" at issue is the County "actively making the decision to leave R.M. (and other minors) in a sex trafficking enterprise in order to further and temporarily elongate its criminal investigation, and actively using R.M., an underage victim of sexual trafficking, as a pawn to collect criminal evidence to bolster its investigation."

In support, R.M. cites Doe v. Corp. of President of Church of Jesus Christ of Latter-Day Saints, 141 Wn. App. 407, 167 P.3d 1193 (2007). Doe included a list of considerations for the trial court to determine whether conduct may reasonably be considered so extreme and outrageous as to warrant a factual determination by the jury. 141 Wn. App. at 429. These considerations include:

> (a) the position the defendants occupied; (b) whether the plaintiff was peculiarly susceptible to emotional distress, and if the defendants knew this fact; (c) whether the defendants' conduct may have been privileged

under the circumstances; (d) whether the degree of emotional distress the defendants caused was severe as opposed to merely annoying, inconvenient, or embarrassing to a degree normally occurring in a confrontation between these parties; and (e) whether the defendants were aware that there was a high probability that their conduct would cause severe emotional distress, and they consciously disregarded it.

Doe, 141 Wn. App. at 429-30 (citing Seaman v. Karr, 114 Wn. App. 665, 685, 59 P.3d 701 (2002)).

In Doe, a teenager disclosed to a Bishop at her church, a leadership position, that her stepfather had been sexually abusing her. 141 Wn. App. at 431-32. At trial, she presented evidence that: during her disclosure, the Bishop suggested that if the abuse were reported to CPS she would be the cause of her family's break up; the Bishop did not notify her mother of the abuse or report it to LDS Church Social Services, superiors, or CPS; and the Bishop's advice had the effect of silencing her. Doe, 141 Wn. App. 431-32.

Whether or not the County's behavior is called nonfeasance, the flaw in R.M.'s argument is that the intentional tort of outrage requires conduct that is extreme and outrageous directed at the plaintiff.

In her declaration, R.M. asserted that during the time she was sex trafficked, a worker at the Golden Touch was working as an informant and providing information to Detective Holland, and that worker knew that R.M. was underage.

R.M. also described her interview with Detective Holland in July 1994:

Prior to giving my statement, I was scared and reluctant to speak out of fear of retribution from Landry and King. Detective Holland, and the other involved officers, collectively explained to me that they already knew, and had known for an extended period, that myself and other underage girls were being trafficked since what was at least last October of 1993. They indicated that they knew what was occurring, they knew that minors were

involved, and that this information was all based upon their ongoing surveillance.

I do not recall their exact words, but I do recall feeling angry because they, including Detective Holland, explained to me that they knew that I was being sex trafficked while it was occurring for multiple months.

The July 1994 interview is the first reference to R.M. in the investigative records.[4]

Detective Holland's knowledge of Landry's trafficking operation as he was building the criminal case does not make R.M. the direct recipient of outrageous conduct by the County. While R.M. presented evidence that Detective Holland knew that the trafficking operation involved minors, she failed to present evidence, other than speculation, that Detective Holland knew that R.M. was involved until after R.M. had fled from Landry and King.

R.M. did not establish the existence of a material question of fact concerning the County's conduct. We conclude that summary judgment should have been granted.[5]

We reverse.

_____
Mann, J.

WE CONCUR:

_____
Smith, C.J.

_____
Dwyer, J.

---

[4] The County also argues that R.M.'s interaction with the County during this interview could not be viewed by a reasonable jury as beyond all possible bounds of decency. But R.M.'s claim for outrage was not based on the alleged statements made during the July 1994 interview, rather her claim was that the County "engaged in extreme and outrageous conduct by knowingly or negligently allowing" R.M. to remain in the enterprise.

[5] Because we agree with the County that summary judgment should have been granted on this claim, we do not reach the alternate argument on the statute of limitations.