FILED
COURT OF APPEALS
DIVISION II

2013 APR 30   AM 8: 34

STATE OF WASHINGTON

BY_____
           DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BOBBI WOODWARD, as Personal Representative of the Estate of JOHANNA ELLWANGER, deceased,<br><br>                              Appellant,<br><br>          v.<br><br><br>HECTOR LOPEZ and NITA L. LOPEZ, and the marital community composed thereof; TRENT DALE HERBERT and MICHELLE LEE HERBERT, and the marital community composed thereof; and NEDA J. HERBERT, a single woman,<br><br>                              Respondents. | No. 42757-5-II<br><br>ORDER GRANTING MOTIONS TO EXTEND TIME AND TO PUBLISH OPINION |

**THIS MATTER** came before the court on the motions of a third party requesting an extension of time to file a motion to publish and requesting publication of the opinion filed in this court on February 26, 2013. Neither party filed a response objecting to the publication.

Upon consideration of the motion, it is hereby

**ORDERED** that the motion for extension of time to file a motion to publish is granted. It is further

**ORDERED** that the final paragraph, reading "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

No. 42757-5-II – Order Granting Motions
Page Two


**ORDERED** that the opinion will be published.

It is **SO ORDERED**.

**DATED** this 30TH day of _APRIL_ 2013.

_____
CHIEF JUDGE


Neil H. Robblee
PO Box 1329
Edmonds, WA 98020-1329


Matthew D. Mills
2013 Harkins Street
Bremerton, WA 98310

Joseph P. Tall
2611 NE 113th Street, suite 300
Seattle, WA 98125-6700

FILED
COURT OF APPEALS
DIVISION II

2013 FEB 26 AM 10: 23

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BOBBI WOODWARD, as Personal Representative of the Estate of JOHANNA ELLWANGER, deceased, <br><br>                     Appellant, <br><br> v. <br><br> HECTOR LOPEZ and NITA L. LOPEZ, and the marital community composed thereof; TRENT DALE HERBERT and MICHELLE LEE HERBERT, and the marital community composed thereof; and NEDA J. HERBERT, a single woman, <br><br>                     Respondents. | No: 42757-5-II <br><br><br> UNPUBLISHED OPINION |

VAN DEREN, J. — Bobbi Woodward, as personal representative of the Johanna Ellwanger estate,[1] appeals the trial court's order granting partial summary judgment in favor of Hector and Nita Lopez, Trent and Michelle Herbert, and Neda Herbert (collectively the Lopezes). The trial court held that no genuine issue of material fact remained and as a matter of law (1) the express easement on the Lopez property does not benefit Ellwanger's short subdivision plat (SP) 432 lots, (2) no implied easement exists on the Lopez property for the benefit of Ellwanger's SP 432 lots, and (3) Ellwanger is not entitled to a private way of necessity through the Lopez property to access her SP 432 lots. Ellwanger also appeals the trial court's denial of her motion for reconsideration of its summary judgment order. We affirm the trial court's order granting

---

[1] For clarity, we refer to the appellant as Ellwanger throughout the opinion.

summary judgment dismissal of Ellwanger's claim of an express easement. But we hold that Ellwanger produced evidence raising genuine issues of material fact that preclude summary judgment on the existence of an implied easement and private way of necessity. Accordingly, we reverse the trial court's order of summary judgment on those issues and remand for trial.

FACTS

The parties' dispute arises from their respective interests in land that sits between State Route 16 and Bethel-Burley Road in Kitsap County, Washington. All the land at issue in this case was once owned by Florence Ford. In 1946, Ford conveyed a parcel of that land to a third party, which conveyance separated her remaining land into a north and south parcel. Ford excepted a 30 foot wide strip of land running along the eastern portion of the conveyed property that connects Ford's remaining parcels to the north and south. Neda Herbert owns the parcel Ford conveyed in 1946.[2]

In 1977, Ford subdivided her two remaining parcels under Kitsap County short subdivision applications 431 and 432. Each short subdivision resulted in four lots: A, B, C, and D. SP 431 lies north of the Herbert property; and SP 432 lies south of the Herbert property. Lots A, B, and C of SP 431 are rectangular in shape and abut SR 16 to the east and abut Lot D to the west. Lot D abuts Bethel-Burley Road to the west, Olympic Drive to the northwest, and lots A, B, and C to the east. All of the SP 432 lots are rectangular in shape and abut SR 16 to the east and Bethel-Burley Road to the west.

Each subdivision application included legal descriptions of the lots and a sketch of the subdivision. The application required legal descriptions that included reference to ingress or

---

[2] We refer to this parcel as the Herbert parcel. The Herberts purchased the property in 1964 from Guy and Violet Coen.

egress for all proposed parcels not having street frontage. The legal description of each of the lots in SP 431 stated that the lot is "[t]ogether with and subject to easements per sketch." Clerk's Papers (CP) at 88. The included sketch depicted a 60 foot wide easement along the east boundary of lots A, B, and C of SP 431.

The subdivision application for SP 432 did not mention or depict any easement. Neither the legal description of the lots nor the sketch included an easement benefitting or burdening any of the SP 432 lots. But a 1995 survey conducted for the Ford estate depicted the 60 foot easement through SP 431 lots A, B, and C and noted that the easement was for the benefit of lots A, B, and C of SP 431, and was to benefit all of the SP 432 lots.

When Herbert purchased her property in the mid to late 1960s, the northern and southern boundaries of the property were fenced.[3] In 1996, Hector and Nita Lopez purchased lot C of SP 431, which lot adjoins the north side of the Herbert property.[4] According to Herbert's deposition testimony, in 1998, a logging company clearing lot A in SP 432 knocked down the barbed wire fences that ran along the north and south boundaries of the Herbert property and put in a road within the 30 foot wide strip of land retained by Ford and the road and utility easement along the east 60 feet of lots A, B, and C of SP 431.

In 2007, Ellwanger obtained title to all of the lots in SP 432, lots B and D of SP 431, and the 30 foot wide strip retained by Ford in 1946. Ellwanger began to develop her SP 432 properties, but the Lopezes resisted when Ellwanger attempted to lay utility lines within the 30 foot wide strip and the 60 foot easement running through the Lopez property. Ellwanger sued the Lopezes, seeking (1) to quiet title in the 30 foot wide strip; (2) a declaration that her

---

[3] The date of Herbert's purchase is referred to as 1964 and as 1969.

[4] We refer to lot C of SP 431 as the Lopez property.

properties are dominant estates entitled to use the 60 foot easement through the Lopez property for ingress, egress, and utilities; and (3) money damages, fees, and costs.

The Lopezes moved for partial summary judgment, asserting that no material fact is in dispute and that as a matter of law: (1) the express easement on the Lopez property does not benefit the SP 432 lots, (2) no easement by implication exists on the Lopez property in favor of the SP 432 lots, and (3) Ellwanger is not entitled to a private way of necessity through the Lopez property for the benefit of her SP 432 lots. Ellwanger asserted that genuine issues of material fact remain about whether an implied easement exists on the Lopez property benefitting Ellwanger's SP 432 lots and whether the access to Ellwanger's SP 432 lots through the Lopez property is necessary.

Ellwanger produced a declaration of Frederick A. Kegel, a professional engineer and land surveyor, who met Ford sometime around 1978 to 1980. Kegel declared that "Ford intended to create an easement all the way across SP 431 in order to maintain her right and the right of her heirs, successors and assigns, to grant further easement to her or assigned properties to the South (SP 432) via the 30 foot strip." CP at 44. He also declared that Ford accessed her properties via the road within the 30 foot wide strip. Kegel stated:

> The extension of a 60 foot wide access and utility easement across the full width of SP 431 is not a normal procedure unless the subdivider has the intent to extend access to adjoining properties, whether they own them or not. Based upon this fact, it is my opinion that . . . Ford was well aware of the access problems to Lots A, B, C, and D of SP 432 which the swamp alongside Bethel-Burley Road presented. Therefore, it would be prudent of her to keep her options open to access SP 432 across SP 431.

CP at 44.

Ellwanger also provided a declaration from wetland expert Vaughn Everitt. Everitt declared that the west side of each of the SP 432 lots between the potential building sites and the

No. 42757-5-II

Bethel-Burley Road is wetland. He explained that there are no existing roads to the SP 432 lots, so wetland fill and mitigation would be necessary to gain access from the Bethel-Burley Road. Everitt opined that because wetland mitigation typically costs $200,000 an acre, it would be "prohibitively expens[i]ve" to construct a road and lay utilities across the wetlands. CP at 38. Thus, he reasoned that the only reasonable access to the SP 432 lots is along the road within the 30 foot wide strip and the easement through the Lopez property.

The trial court granted the Lopezes' motion for partial summary judgment. Ellwanger unsuccessfully sought reconsideration.

## ANALYSIS

Ellwanger argues that summary judgment was improper and that the trial court erred in denying her motion for reconsideration because several genuine issues of material fact remain regarding whether an implied easement exists and whether she is entitled to a private way of necessity through the Lopez property.[5] We agree. Because we reverse the trial court's summary

---

[5] Ellwanger's complaint asserted that access to her property was also allowed through an express easement. The Lopezes moved for summary judgment arguing that as a matter of law the express easement on the Lopez property did not benefit Ellwanger's SP 432 lots. Ellwanger did not brief or argue the express easement theory in response to the Lopezes' motion for summary judgment. The trial court granted the Lopezes' summary judgment motion, which included that no express easement existed for the benefit of Ellwanger's SP 432 properties. Ellwanger sought reconsideration of the trial court's summary judgment decision, but again, did not brief or argue the express easement theory. On appeal, Ellwanger assigns error to the entirety of the trial court's grant of partial summary judgment, which includes the dismissal of Ellwanger's express easement claim. But Ellwanger does not argue, cite to the record, or cite authority supporting an assignment of error to the trial court's order granting summary judgment on the issue of whether the express easement on the Lopez property benefits the SP 432 lots. Accordingly, we do not address the initial claim of express easement, which appears abandoned. *See State v. Thomas*, 150 Wn.2d 821, 868-69, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L.E.2d 177 (2004); *see also Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991) (assignment of error unsupported by legal argument will not be considered on appeal); *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990) (stating that the court need not consider arguments that are not

5

judgment order and remand for trial on the issues of implied easement and private way of necessity, we do not reach the trial court's denial of Ellwanger's reconsideration motion.

## I.   STANDARD OF REVIEW

We review a trial court's order for summary judgment de novo, performing the same inquiry as the trial court. *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Visser v. Craig*, 139 Wn. App. 152, 157, 159 P.3d 453 (2007) (quoting CR 56(c)).

The moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "'After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts which sufficiently rebut the moving party's contentions and disclose the existence of a genuine issue as to a material fact.'" *Visser*, 139 Wn. App. at 158 (quoting *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 852, 719 P.2d 98 (1986)). "If the nonmoving party fails to do so, then summary judgment is proper." *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

We consider all evidence submitted and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *McPhaden v. Scott*, 95 Wn. App. 431, 434, 975 P.2d 1033 (1999). But a nonmoving party "'may not rely on speculation [or on] argumentative assertions that unresolved factual issues remain.'" *Visser*, 139 Wn. App. at 158 (alteration in

developed in the briefs and for which a party has not cited authority); RAP 10.3(a)(6) (appellate brief should contain argument supporting issues presented for review, citations to legal authority, and references to relevant parts of the record).

original) (quoting *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)). An expert opinion on an ultimate issue of fact is sufficient to preclude summary judgment. *Eriks v. Denver*, 118 Wn.2d 451, 457, 824 P.2d 1207 (1992); *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 352, 588 P.2d 1346 (1979). "In the context of a summary judgment motion, an expert must support his opinion with specific facts, and a court will disregard expert opinions where the factual basis for the opinion is found to be inadequate." *Rothweiler v. Clark County*, 108 Wn. App. 91, 100, 29 P.3d 758 (2001). "A fact is an event, an occurrence, or something that exists in reality. It is what took place, an act, an incident, a reality as distinguished from supposition or opinion." *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988) (internal citation omitted).

II.  EASEMENT BY IMPLICATION

Ellwanger argues that issues of material fact remain as to whether an easement by implication exists through the Lopez property for ingress, egress, and utilities for the benefit of the SP 432 lots and, thus, the trial court erred by granting summary judgment on this issue. We agree.

"Easements by implication arise by intent of the parties, which is shown by facts and circumstances surrounding the conveyance." *Roberts v. Smith*, 41 Wn. App. 861, 864, 707 P.2d 143 (1985). "The factors relevant to establishing an implied easement . . . are (1) former unity of title and subsequent separation; (2) prior apparent and continuous quasi-easement[6] for the benefit of one part of the estate to the detriment of another; and (3) a certain degree of necessity

---

[6] "A 'quasi-easement' refers to the situation where one portion of property is burdened for the benefit of another portion, which would be a legal easement if different persons owned the two portions of property." *McPhaden*, 95 Wn. App. at 437 n.3 (citing *Adams v. Cullen*, 44 Wn.2d 502, 504, 268 P.2d 451 (1954)).

for the continuation of the easement." *McPhaden*, 95 Wn. App. at 437 (footnote omitted). "'Unity of title and subsequent separation is an absolute requirement.'" *Hellberg v. Coffin Sheep Co.*, 66 Wn.2d 664, 668, 404 P.2d 770 (1965) (quoting *Adams v. Cullen*, 44 Wn.2d 502, 505, 268 P.2d 451 (1954)); *Roberts*, 41 Wn. App. at 865. But presence or absence of the second and third factors is not conclusive. *Hellberg*, 66 Wn.2d at 668; *Roberts*, 41 Wn. App. at 865. "Rather, they are aids to determining the presumed intent of the parties as disclosed by the extent and character of the use, the nature of the property, and the relation of the separated parts to each other." *McPhaden*, 95 Wn. App. at 437.

Absolute necessity is not required to establish an implied easement. *Evich v. Kovacevich*, 33 Wn.2d 151, 157-58, 204 P.2d 839 (1949). "The test of necessity is whether the party claiming the right can, at reasonable cost, on his own estate, and without trespassing on his neighbors, create a substitute." *Bays v. Haven*, 55 Wn. App. 324, 329, 777 P.2d 562 (1989). "Although prior use is a circumstance contributing to the implication of an easement, if the land cannot be used without the easement without disproportionate expense, an easement may be implied on the basis of necessity alone." *Fossum Orchards v. Pugsley*, 77 Wn. App. 447, 451, 892 P.2d 1095 (1995) (citing *Adams*, 44 Wn.2d at 507-09).

Here, it is undisputed that Ford owned all of the property comprising SP 432 and SP 431, which includes the Ellwanger and Lopez properties. The parties agree that the properties at issue had unity of title and were subsequently separated. But, the parties disagree about whether there was reasonable necessity and apparent and continuous use of the Lopez property for the benefit of the SP 432 lots. On appeal from summary judgment dismissal, the parties' dispute is whether genuine issues of material fact remain related to the apparent and continuous use and reasonably necessity factors.

To show lack of apparent and continuous use of the Lopez property to benefit the SP 432 lots, the Lopezes submitted deposition testimony from Herbert stating that the north and south boundaries of the Herbert parcel, including both ends of the 30 foot wide strip, had been fenced in by barbed wire from 1964 until 1998. Hector Lopez testified in his deposition that his property was fenced along the southern boundary when he purchased it in 1996. Ellwanger submitted a declaration from Kegel stating that although the SP 432 lots abut Bethel-Burley Road, Ford continued to access those properties from the north by way of the 30 foot wide strip that connects the Lopez property to the SP 432 lots. Kegel stated that he met Ford sometime around 1978 to 1980. Kegel also declared that in 1997 he observed an existing roadbed and fence gates at each end of the 30 foot wide strip.

To rebut Kegel's declaration, the Lopezes submitted a private water agreement between the owners of SP 431 lots A and C (Lopez property) dated 1979 and the sales history from the Kitsap County auditor's office showing that the Lopez property was sold in 1977. The Lopezes argue that these documents show that Ford did not own the Lopez property at the time Kegel knew Ford and, thus, Kegel cannot offer testimony regarding the use of the alleged quasi-easement during unity of title. But the record does not show that the Lopezes moved to clarify or to strike any part of Kegel's declaration as lacking personal knowledge, therefore any deficiency alleged on appeal is waived. *See Lamon*, 91 Wn.2d at 352. On this record, we cannot determine whether Kegel's declaration is deficient, and we must view the facts and reasonable inferences therein in the light most favorable to Ellwanger. Kegel's declaration and Herbert and Lopez's deposition testimony create a material factual dispute regarding the nature of Ford's use of the Lopez property to access her SP 432 lots.

To show that an easement through the Lopez property is not reasonably necessary, the Lopezes point to undisputed evidence that all of the SP 432 lots abut Bethel-Burley Road; thus, ingress, egress, and utility access for the SP 432 lots are available by way of Bethel-Burley Road. The Lopezes argue that mere convenience and economy do not demonstrate the requisite necessity for an easement by implication through the Lopez property.

Ellwanger provided a declaration from wetlands expert Everitt. Everitt declared that wetland occupies the west side of each of the SP 432 lots between the building sites and Bethel-Burley Road. He said that the SP 432 lots have only "two means of access, either over the presently existing 60 foot easement across the Lopez property and 30 foot road across the Herbert property, or over and through the wetlands." CP at 35. Everitt explained that local, state, and federal law requires exhaustion of all other options before wetland fill is permitted. If wetland fill is required, it must be minimized and a plan to mitigate the impact and compensate for the wetland fill must be submitted and approved by local, state, and federal agencies. Everitt estimated that the typical cost of wetland mitigation is $200,000 an acre. Based on those facts, he opined that "[i]t would be prohibitively expens[iv]e to construct a road and lay utilities across the wetlands, which must be done unless access is obtained across the Lopez property easement and 30 foot road." CP at 38. He further declared that in his expert opinion, "[T]he only reasonable access to the subject properties is over the 30 foot road that crosses the Herbert property and the easement that crosses the Lopez property." CP at 35.

The Lopezes argue that Everitt's expert testimony does not create a material issue of fact because it is conclusory and lacks an estimate of actual costs that would be incurred by Ellwanger to create access to Bethel-Burley Road across the wetlands. But in this case, Everitt's

10

expert opinion is sufficiently supported by his explanation of the wetlands on the SP 432 lots and the practical and legal problems of gaining access to the SP 432 lots through those wetlands.

Viewing the declarations of Kegel and Everitt in the light most favorable to the nonmoving party, they raise genuine issues of material fact regarding the parties' intent, prior use, and reasonable necessity of gaining access to the SP 432 lots through the Lopez property. Thus, we hold that the trial court erred in granting summary judgment to the Lopezes on Ellwanger's claim of an implied easement.

III. CONDEMNATION OF A PRIVATE WAY OF NECESSITY

Ellwanger also argues that summary judgment should not have been granted because an issue of material fact remains as to whether she is entitled to condemn a private way of necessity through the Lopez property to benefit her SP 432 lots. We agree.

RCW 8.24.010 authorizes a landowner to condemn a private way of necessity over the land of another if it is necessary for proper use and enjoyment of his land.[7] The landowner's necessity need not be absolute. *Beeson v. Phillips*, 41 Wn. App. 183, 187, 702 P.2d 1244 (1985). But it must be "'reasonably necessary under the facts of the case, as distinguished from merely convenient or advantageous.'" *Ruvalcaba*, 175 Wn.2d at 7 (citation omitted in original) (quoting

---

[7] RCW 8.24.010 states:

> An owner . . . of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity or to construct and maintain any drain, flume or ditch, on, across, over or through the land of such other . . . may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity, or for the construction and maintenance of such drain, flume or ditch, as the case may be. The term "private way of necessity" . . . include[s] a right of way on, across, over or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads, logging roads, flumes, canals, ditches, tunnels, tramways and other structures upon, over and through.

11

*Brown v. McAnally*, 97 Wn.2d 360, 367, 644 P.2d 1153 (1982)). "'[T]he condemnor has the burden of proving the reasonable necessity for a private way of necessity, including the absence of alternatives.'" *Ruvalcaba*, 175 Wn.2d at 7 (quoting *Noble v. Safe Harbor Family Pres. Trust*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009)).

The parties do not dispute that each of the SP 432 lots abuts Bethel-Burley Road. Based on this apparent access to Bethel-Burley Road, the Lopezes argue that Ellwanger does not need a private way of necessity through the Lopez property. The Lopezes further argue that summary judgment on this issue was proper because Ellwanger did not submit evidence of the quantitative cost to access the lots by way of Bethel-Burley Road or the reasonableness of that access. We disagree.

Ellwanger produced evidence that created a material factual dispute regarding the feasibility of accessing the SP 432 lots by way of Bethel-Burley Road and the need to access the lots through the Lopez property. As we discussed above, Ellwanger's wetlands expert, Everitt, declared that the building sites on the SP 432 lots are separated from the Bethel-Burley Road by wetlands and that the only reasonable access for ingress, egress, and utilities is through the Lopez property to the north. Everitt described the requirements and process for gaining access to the SP 432 lots across the wetlands and opined that it would be prohibitively expensive. Once again, Everitt's expert opinion raises genuine issues of material fact regarding feasibility and reasonable necessity of access through the Lopez property.

Considering the evidence and reasonable inferences from it in the light most favorable to Ellwanger, we hold that Ellwanger has demonstrated genuine issues of material fact sufficient to require trial on whether an implied easement exists through the Lopez property for the benefit of the SP 432 lots and whether Ellwanger is entitled to condemn a private way of necessity through

No. 42757-5-II

the Lopez property. Accordingly, we reverse the trial court's summary judgment order in favor of the Lopezes on the issues relating to the existence of an implied easement and a private way of necessity, and we remand for trial on those claims. But we affirm the trial court's summary judgment order dismissing the express easement claim.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_Van Deren, J._
VAN DEREN, J.

We concur:

_Quinn-Brintnall, J._
QUINN-BRINTNALL, J.

_Worswick, C.J._
WORSWICK, C.J.

13