# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MAJID NAYERI and BITA ABIDIAN, | No. 57873-5-II |
| Appellants, | |
| v. | |
| EAGLE HARDWARE & GARDEN, INC. d/b/a LOWE'S COMPANIES, INC., a North Carolina Corporation, and THE CENTER AT 4815 LLC, a Washington limited liability company, | PUBLISHED OPINION |
| Respondents, | |
| KUEIFOUN, INC d/b/a THE HERBAL GARDEN, a Florida Corporation, and OGLE PROPERTIES, LLC, a Washington limited liability company, | |
| Defendants. | |

GLASGOW, J.—Article I, section 16 of the Washington Constitution and RCW 8.24.010 allow a party to condemn a private way of necessity (usually an easement) across another's property in order to access land that is otherwise inaccessible. The doctrine allows private condemnation only when the access sought is reasonably necessary for the condemnor to use and enjoy their land.

Dr. Majid Nayeri bought two undeveloped landlocked parcels in Tacoma from the Department of Transportation. The property was zoned for commercial development but contained

steep slopes. After trying to negotiate access easements through neighbors' properties for several years, Nayeri sued multiple neighbors, including Eagle Hardware & Garden, d/b/a Lowe's, and The Center at 4815 LLC, seeking to condemn an easement under RCW 8.24.010.

Lowe's moved for summary judgment. It argued that an easement was not reasonably necessary because Nayeri knew the property was landlocked when he bought it and because it was legally impossible to develop the property due to the difficulty of securing permits and meeting other requirements in the Tacoma Municipal Code. The trial court granted the motion, dismissed the case, and awarded Lowe's and The Center statutory attorney fees.

Nayeri appeals. He argues that there was a genuine dispute of material fact as to whether an easement was reasonably necessary to access and develop his property. He also asserts that we should reverse the trial court's award of attorney fees and require the trial court to reconsider its fee award in light of our reversal of summary judgment. Lowe's and The Center seek appellate attorney fees.

We reverse the order granting summary judgment and remand for further proceedings consistent with this opinion, but affirm the order awarding attorney fees under the statute. We grant appellate attorney fees to Lowe's and The Center.

FACTS

I. BACKGROUND

In 2005, the Department of Transportation bought two adjacent undeveloped parcels of property as part of a project to construct a new off-ramp from State Route 16 in the city of Tacoma. Although the eastern parcel originally bordered a road on its eastern edge, the construction of the off-ramp eliminated that road, rendering the parcels landlocked.

The landowner who sold the parcels to the Department also owned three developed parcels immediately to the south, which all had access to Center Street on their southern borders. The landowner sold one of those parcels in 2008 to The Center and the other two parcels in 2016 to Kueifoun. The Center granted Kueifoun an access easement that resulted in Kueifoun and The Center having a shared driveway on The Center's property. The undeveloped parcels were bordered on the north by a Lowe's store.



Br. of Resp't Lowe's at 5.

In 2007, when the Department no longer needed the undeveloped parcels for the construction project, it designated the parcels as surplus and posted them for sale. Nayeri buys and sells land as investments. In 2015, Nayeri bought the parcels. The sale contract expressly provided

that Nayeri "shall have no right of ingress and egress to, from[,] or between [State Route] 16" and the parcels. Clerk's Papers (CP) at 236.

## II. LAWSUIT

After attempting to negotiate access to the parcels through neighboring properties for several years, Nayeri sued the owners of the neighboring properties. Nayeri sued Eagle Hardware & Garden, d/b/a Lowe's, and The Center at 4815 LLC.[1] Nayeri sought to condemn an easement across one of the neighbors' properties to access his land under RCW 8.24.010, which allows a property owner to condemn "a private way of necessity" if their land "is so situate with respect to the land of another that [the private way] is necessary for its proper use and enjoyment." RCW 8.24.010.

The complaint asserted that Nayeri purchased the property "to construct a 10,000 square foot general office building." CP at 6. He requested 30-foot-wide access by way of an easement on the Lowe's property or a 24-foot-wide easement from either Kuiefoun's or The Center's property. The easement would be for ingress, egress, and utilities. And Nayeri sought a temporary construction easement through whichever property provided the access point.

A.     Summary Judgment Arguments

1.     Lowe's and The Center's arguments and evidence

In December 2022, Lowe's moved for summary judgment and The Center joined the motion. Lowe's argued that there was no dispute of material fact and that an easement over its property was not "legally possible, let alone reasonably necessary." CP at 419. Specifically, it

---

[1] Nayeri also sued Ogle Properties LLC and Kueifoun Inc., a Florida corporation which never responded or appeared. Nayeri later voluntarily dismissed Ogle and The Center, but then readded The Center.

reasoned that it was impossible for Nayeri to develop his property without being granted several municipal code variances and additional easements, which Nayeri had not yet sought. And the easement Nayeri sought over the Lowe's property would interfere with the store's contractor bay and would remove several parking stalls. Thus, Lowe's believed that Nayeri's proposed easement through its property was "neither feasible [nor] reasonable." CP at 423.

Lowe's also asserted that there were "geologically preferable" alternate easements and possibly an implied easement of necessity through The Center's or Kuiefoun's property. CP at 431. Finally, Lowe's contended that Nayeri was precluded from condemning an easement because he knew the parcels were landlocked when he bought them.

Lowe's submitted a geotechnical firm's report that Nayeri commissioned in 2019. The report explained that, unless the city granted an exception, it was unlikely Nayeri could develop his parcels due to municipal code buffer requirements for the steep slopes. The geotechnical firm anticipated the city would grant an exemption because the slopes were the result of "past grading activities" rather than naturally occurring. CP at 372. It then explained that a retaining wall or daylight basement would likely be required as part of any structure built on the property. Overall, the report concluded that "the proposed development of the project area appears feasible from a geotechnical standpoint." CP at 374. And it asserted that development would likely be permitted under the municipal code as long as a geotechnical firm could "demonstrate that the improvements would not adversely affect the stability of adjacent properties" based on design information from a prospective developer. CP at 375.

Lowe's provided a declaration from an engineer asserting that developing the property was "largely impossible given the steep slopes . . . and the related regulatory slope buffers and building

setbacks" in the municipal code. CP at 463. While the engineer acknowledged the geotechnical firm's expectation that the city would grant an exemption to the buffer requirements for a reasonable design plan, he stated that Nayeri had "not provided a site plan, access design layout," or any other details for his proposed use of the land "other than to vaguely say" he anticipated a future owner would "build a 10,000 [square foot] commercial use building." CP at 463-64.

The Lowe's engineer believed that municipal regulations would severely hinder developing the property. He explained that, based on the geotechnical report, much of Nayeri's property constituted both an erosion and "landslide hazard area," requiring any building to be set back from the slope under the municipal code. CP at 463. He stated that Lowe's had submitted a preliminary development request for Nayeri's property to the city. He asserted that the city produced a memo stating that, due to how the parcels had been zoned, nothing could be built on the parcels without approval from a hearing examiner and the city council. And he noted that the city "requires a parking analysis, which has not been completed, and *may* also necessitate a parking variance." CP at 465 (emphasis added). The engineer listed other hurdles to development, such as biodiversity and stormwater analyses.

Lowe's also submitted a declaration from an engineering geologist. The geologist stated that, because of the steep slopes to the west, the only possible access from the Lowe's property would be "directly across" from the contractor bay and required eliminating several parking spots for the bay. CP at 471. He asserted that "from a geological standpoint," access from Kueifoun's property would be "superior to access through the Lowe's property." *Id*. The Lowe's geologist did not discuss the geotechnical firm's report.

6

The Center largely joined with the Lowe's motion but argued that a condemnation through its property would "gut The Center's employee and visitor parking and equipment storage." CP at 531. And it asserted that there was no implied easement of necessity through its property. The Center attached a declaration from an engineer who worked there. This engineer explained that an easement through The Center's property would significantly impact operations by requiring the removal of security fencing used to protect valuable survey vans and equipment and the loss of roughly 10 parking spots. The Center also asserted that access through Kuiefoun's property was untenable because the access easement The Center had granted Kuiefoun for the shared driveway allowed only 200 trips per day, and Kuiefoun was already "close to, if not exceeding" that limit. CP at 535.

2.     Nayeri's arguments and evidence

Nayeri argued that there was a question of material fact as to whether he was entitled to condemn an easement, and that the statute required "the selection of the appropriate route among multiple alternative routes . . . *only after* the finding of whether a plaintiff is entitled to a private way through condemnation action." CP at 485. He noted that there was no dispute that the parcels were landlocked. Nayeri asserted that a trier of fact needed to weigh the circumstances of the case "to determine which of the three access points" was the most suitable. CP at 494. He agreed with The Center that there was no implied easement to access the parcels.

Nayeri attached a declaration from an engineering geologist who evaluated reports and records related to the property and visited the property in January 2023. Although the geologist acknowledged that the property contained significant slopes, he stated that the site did not meet the other criteria defining landslide hazard areas. *See* TACOMA MUNICIPAL CODE (TMC)

13.11.720(A)(1)-(2). In particular, he noted that the ground was glacial till which, due to compression from glaciers, had "low permeability and high shear strength," so "slopes in the material will stand at a relatively high angle without failing." CP at 500. And the geotechnical firm's report stated that "[n]o hydrologic features were observed on site, such as seeps, springs, ponds and streams" that could contribute to erosion and landslide risk. CP at 372.

Nayeri's geologist believed that it was possible to develop the parcels. Based on geologic maps, he concluded that some of the slopes on the property were "man-made cut slopes which were created during development of the properties to the south." CP at 500. And he expressly disagreed with the Lowe's engineer's "conclusion that buffer and setback areas are required for the steep slopes and would limit site access or development" because the municipal code allowed exceptions to setback requirements when the risk could be "minimized by engineering, design, or modified construction practices." CP at 501; TMC 13.11.715(A). "[E]ven if Erosion or Landslide Hazard areas did exist on the site, the steep slope areas could be mitigated through common geotechnical engineering means and practices in order to make the site buildable while protecting public safety as allowed under [the municipal code]." CP at 501. The geologist stated that it was his "professional opinion" that "the geologic and geotechnical conditions currently found on [the parcels] do not limit or preclude the development of the properties since the steep slopes can be engineered as a part of the development to protect public safety." *Id*.

Nayeri also provided a declaration from an engineer who reviewed reports on the site and visited it in late 2022. The engineer explained that the flattest part of the property was located near the Lowe's property line, making it ideal for a parking lot, with any structure built into the hillside.

Thus, he asserted that access through the Lowe's property was "the preferred choice for traffic flow and ease of access." CP at 518.

B.      Trial Court Ruling

At the summary judgment hearing, the trial court repeatedly expressed concern about whether Nayeri needed conditional development permits before an access easement could be deemed reasonably necessary or whether the court could enter an order condemning the easement first when permitting remained uncertain. Lowe's argued that Nayeri needed to "take a step in th[e] direction" of pursuing development plans before he could seek an easement. Verbatim Rep. of Proc. (Jan. 27, 2023) at 13. Nayeri maintained that there was no explicit requirement to get permits before condemning an easement, and permits likely would not be granted without the easement.

The trial court granted the Lowe's motion for summary judgment. It explained that it was not "appropriate for the Court to grant a private way of necessity when it's unknown whether that is even possible to be done, where it's going to be, how much it's going to be, what is the burden to the condemned property" due to the lack of conditional permits or development plans. *Id*. at 41. The court also stated, "[I]f you want to determine that [the easement] was reasonable and all those other factors, you have to know what it is that you're giving up." *Id*. at 41-42.

The trial court awarded Lowe's and The Center attorney fees under RCW 8.24.030. Lowe's received a judgment for $100,000 and The Center received a judgment for $11,500. Nayeri appeals.

9

ANALYSIS

SUMMARY JUDGMENT

Nayeri argues that the trial court erred by granting summary judgment because there was a genuine issue of material fact about whether an easement was reasonably necessary for the use and enjoyment of his property.

Lowe's and The Center respond that Nayeri failed to demonstrate a genuine dispute of material fact about whether an easement was reasonably necessary. First, the defendants both argue that Nayeri's knowledge that the property was landlocked when he bought it should bar him from seeking an easement. Next, Lowe's asserts that condemnation could not be reasonably necessary because developing the property was legally impossible and "Nayeri's experts failed to rebut any of [the Lowe's] expert testimony" about permit requirements. Br. of Resp't Lowe's at 49. They contend that Nayeri cannot show reasonable necessity without first establishing specific plans and that he will be able to build on the property. The defendants also assert that an easement through either of their properties could not be reasonably necessary because of the impact to their businesses.

We review a summary judgment ruling de novo. *Ruvalcaba v. Kwang Ho Baek*, 175 Wn.2d 1, 6, 282 P.3d 1083 (2012). Summary judgment is appropriate if, when taking the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party, "'reasonable minds could reach but one conclusion.'" *Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019) (quoting *Afoa v. Port of Seattle,* 176 Wn.2d 460, 466, 478, 296 P.3d 800 (2013)). An expert opinion on an issue of material fact is sufficient to preclude summary judgment. *Eriks v. Denver,* 118 Wn.2d 451, 457, 824 P.2d 1207 (1992). "But an expert's opinion must be grounded

in fact, and statements based solely on speculation or assumptions will not preclude summary judgment." *Sartin v. Est. of McPike*, 15 Wn. App. 2d 163, 173, 475 P.3d 522 (2020).

Article I, section 16 of the Washington Constitution provides, "Private property shall not be taken for private use, except for private ways of necessity . . . . No private property shall be taken or damaged for public or private use without just compensation having been first made." Correspondingly, the legislature has provided a mechanism to condemn private ways of necessity:

> An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity . . . may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity.

RCW 8.24.010. Once reasonable necessity has been found, if "there is more than one possible route for the private way of necessity," courts must consider certain criteria in selecting the route and weigh the "relative benefits and burdens of the various possible routes . . . to establish an equitable balance between the benefits to the land for which the private way of necessity is sought and the burdens to the land over which the private way of necessity is to run." RCW 8.24.025(3). "Although the [private condemnation] statute must be strictly construed, it rests on a public policy to prevent landlocked property from being rendered useless." *Sorenson v. Czinger*, 70 Wn. App. 270, 278, 852 P.2d 1124 (1993).

"[T]he condemnor has the burden of proving the reasonable necessity for a private way of necessity, including the absence of alternatives." *Noble v. Safe Harbor Family Pres. Tr.*, 167 Wn.2d 11, 17, 216 P.3d 1007 (2009). A landowner's "need for a way of necessity does not have to be absolute" to condemn access under the statute. *Ruvalcaba*, 175 Wn.2d at 7. But the condemnation must be reasonably necessary under the facts of the case, not merely convenient or

11

advantageous. *Id*. If there is already an existing easement or private way that the condemnor seeks to make joint use of, that use "must not differ from and must not be incompatible with the use to which it is already being put by the condemnees." *Brown v. McAnally*, 97 Wn.2d 360, 368, 644 P.2d 1153 (1982). "In short, it must neither impair nor destroy full use of the existing road by the condemnees." *Id.* And while courts must consider alternative routes that access the same point on a condemnnor's property, courts are not authorized to consider alternative routes that "will not provide access to the part of the condemnor's property which he desires to use." *Sorenson*, 70 Wn. App. at 275.

A.      Knowledge That the Property Was Landlocked at Purchase

Lowe's and The Center first argue that Nayeri's knowledge that the parcels were landlocked should bar any ruling that an easement was reasonably necessary to access his property. They rely on *Ruvalcaba* to assert that "a condemner's knowledge that a property is landlocked at the time [the] condemner acquires the property is *prima facie* evidence that a subsequent private condemnation of a private way of necessity under ch. 8.24 RCW is unreasonable." Br. of Resp't Lowe's at 34. We disagree. And a buyer's knowledge that a property is landlocked at purchase does not automatically bar private condemnation under chapter 8.24 RCW.

The Ruvalcabas severed their land in two and sold the parcel with road access, leaving the other parcel landlocked because they did not reserve an easement. *Ruvalcaba*, 175 Wn.2d at 4. They then waited roughly 35 years before seeking to condemn an easement across their neighbors' land, claiming that building a road across the parcel they had sold was financially impracticable. *Id*. at 8. A trial court granted the neighbors' summary judgment motion and the Supreme Court affirmed. *Id*. at 9. The Supreme Court explained that "no reasonable finder of fact could find that

there was reasonable necessity" where "the Ruvalcabas landlocked their own parcel, made claims of reasonable necessity based on financial impracticability, and waited approximately 35 years to bring a condemnation action." *Id*. at 8. But the Supreme Court expressly declined to adopt a bright-line rule that would "automatically preclude[] a private way of necessity any time a landowner voluntarily landlocks [their] own parcel." *Id*. at 7-8.

We recognize that after *Ruvalcaba,* there is no bright-line rule that knowing purchase of a landlocked property bars future private condemnation for ingress and egress in all circumstances. Similarly, we reject Lowe's' request "to find that such knowledge, combined with the severely discounted price Dr. Nayeri paid for the properties, preclude[s] a finding that his attempt to use RCW 8.24.010 is a reasonable necessity." Br. of Resp't Lowe's at 41. Holding that buying property known to be landlocked means the purchaser can never demonstrate reasonable necessity under RCW 8.24.010 would contravene Washington's "overriding public policy goal against making landlocked property useless." *Ruvalcaba*, 175 Wn.2d at 8.

Additionally, Nayeri's knowing purchase of landlocked property *alone* should not be the basis for summary judgment. The facts of *Ruvalcaba* were fairly unique and far more extreme than the facts of the present case. Nayeri bought landlocked property; he did not landlock it himself. And he sued for private condemnation after a few years of failed negotiations with his neighbors; he did not wait 35 years before he began pursuing condemnation. And unlike the Ruvalcabas, who could have reserved an access easement when they landlocked themselves, Nayeri could not have otherwise obtained an easement to access State Route 16 from his land. *Jobe v. Weyerhaeuser Co.*, 37 Wn. App. 718, 725-26, 684 P.2d 719 (1984) (chapter 8.24 RCW does not allow private condemnation of State or municipally owned land). Under these circumstances, Nayeri's

knowledge that the parcels were landlocked at purchase alone does not bar him from pursuing a private condemnation action.

We agree with Lowe's, however, that Nayeri's knowledge at the time of purchase is a factor that can be considered in any factfinding trial. A factfinder could ultimately find that an easement is not reasonably necessary based in part on Nayeri's knowledge that the property was landlocked at the time of purchase. Nayeri has pointed to no law preventing consideration of this fact as part of the analysis of reasonable necessity.

B.     Legal Impossibility

Next, Lowe's relies on *Granite Beach Holdings, LLC v. Department of Natural Resources*, 103 Wn. App. 186, 11 P.3d 847 (2000) to assert that Nayeri cannot demonstrate reasonable necessity because developing the parcels was legally impossible due to regulatory hurdles. It asserts that the various plans, analyses, and variances that Nayeri may have to produce or secure amount to a complete inability to develop the parcels. We disagree.

Regulations that would affect the scope of any future easement are different from the legal impossibility confronted in *Granite Beach*. In that case, Granite Beach bought landlocked property that was "completely surrounded by State trust land and [could] be accessed only by logging roads that run across the State's land." *Granite Beach*, 103 Wn. App. at 190. It sued two entities that had easements part of the way across State land, but none of those easements actually reached Granite Beach's property. *Id*. A trial court dismissed Granite Beach's condemnation claim on summary judgment and Division One affirmed because the easement sought "would not provide full access to the appellants' land." *Id*. at 203. Additionally, the easement Granite Beach sought would have increased the burden on the State's land, "effectively condemn[ing] a new interest in State land,

14

which is not authorized by chapter 8.24 RCW." *Id*. at 204. Therefore, the condemnation sought in that case was legally impossible because there was no mechanism through which Granite Beach could actually procure access to their property.

In contrast, the fact that additional easements beyond the right of ingress and egress may be required does not prohibit condemnation under the statute. *See Sorenson*, 70 Wn. App. at 278 ("Without access to customary utilities, this landlocked residential property will be rendered useless. The statute [RCW 8.24.010] must be construed to authorize the installation of utilities necessary for residential use."). And competing expert testimony on an issue of material fact can preclude summary judgment. *Eriks*, 118 Wn.2d at 457; *Woodward v. Lopez*, 174 Wn. App. 460, 474, 300 P.3d 417 (2013).

Lowe's argues that an easement was not reasonably necessary because it would be difficult to develop the property due to zoning and permit requirements in the municipal code, and Nayeri has not produced concrete plans of what he intends to build. This does not reach the level of impossibility in *Granite Beach*, where *accessing* the property was legally impossible because it was surrounded by State lands. The legal impossibility in that case stemmed from the fact that the entities Granite Beach sued literally could not give Granite Beach access to its property even if they wanted to, because their easements across State land did not reach the property, and chapter 8.24 RCW did not authorize condemnation of State land. *Granite Beach*, 103 Wn. App. at 204.

We agree that it was legally impossible for Nayeri to condemn access from State Route 16 onto his land. *Id*. at 204. But there was evidence that it was still possible to legally access his land from another party's property, given that several other private properties directly abutted Nayeri's parcels, and an engineer provided a sworn declaration about possible access routes, showing an

easement was feasible at least according to one expert. Under these circumstances, municipal development regulations that affect the scope of what can be *built* on a property are not the same as a legal prohibition on all *access* to the property.

To the extent that development regulations affected the feasibility of development on the property, Nayeri produced a geologist's expert testimony, which Lowe's acknowledged, that the site could be developed in compliance with the municipal code. For example, at least some of the steep slopes were man-made rather than naturally occurring. The geologist's opinion was based on his own inspection of the site as well as the geotechnical firm's report that reached the same conclusion. And Nayeri's engineer agreed that at least part of the property could be built on and identified three possible access points. Because competing expert opinions can preclude summary judgment, *Woodward*, 174 Wn. App. at 474, we hold that there was a genuine dispute of material fact as to whether it was legally possible to develop the property and develop access through a neighboring property.

C.    Failure to Meet the Burden of Proof

A party seeking private condemnation under RCW 8.24.010 has the burden to show that the private way of necessity is reasonably necessary for the use and enjoyment of the property. *Noble*, 167 Wn.2d at 17. Lowe's and The Center maintain that Nayeri failed to meet his burden of proof as a matter of law by failing to present evidence of any concrete development plan or progress towards municipal approval of such a plan. We disagree. By itself, the lack of concrete development plans does not bar private condemnation under chapter 8.24 RCW as a matter of law.

The uncertainty of the property's future use is certainly a factor that a trier of fact in a private condemnation proceeding should consider. Uncertainty about the scope and manner of

future use may be a factor that supports a factfinder's ultimate finding that an easement is not reasonably necessary. But the fact that Nayeri sought an easement before securing permits does not alone make him fail to carry his burden of proof as a matter of law. It is true that Nayeri's lack of concrete development plans leaves significant questions about the scope of the easement that a trier of fact could grant. But the scope of access is different than the *necessity* of access. Several experts opined that it was possible to obtain the necessary permits or exemptions from the city, both to build on the property and to access the landlocked property. And the experts made clear that access through one of the neighboring properties would be necessary to build on Nayeri's land. Thus, Nayeri presented enough evidence to defeat summary judgment.

D.      Reasonable Necessity and the Burden on the Condemnees

The respondents also argue that the potential burden on their properties prevents any easement onto Nayeri's property from being reasonably necessary as a matter of law. Lowe's insists that Nayeri's "proposed condemnation would severely adversely impact [the] current use of its property, namely, its busy contractor bay." Br. of Resp't Lowe's at 46. Lowe's also asserts that Nayeri's geologist did not contradict the Lowe's geologist's conclusion that one of the other properties "presented geologically preferable access routes." *Id*. at 20. The Center asserts that a condemnation through its property would "remov[e] significant security features" and require substantial construction. Br. of Resp't The Center at 29. We disagree with Lowe's and The Center.

Expert testimony that a route is the only reasonable means of accessing a property is sufficient to create a genuine issue of material fact regarding feasibility and reasonable necessity that precludes summary judgment. *Woodward*, 174 Wn. App. at 473-74. In *Woodward*, the relevant parcel was not landlocked, and the plaintiff sued for a declaratory judgment that she could

access a preexisting easement for ingress, egress, and utilities. *Id*. at 465, 473. She produced a declaration from an engineer and surveyor explaining that, without the easement, the southern parcel's only access to a road required crossing wetland. *Id*. at 466. The trial court concluded, in part, at the summary judgment stage that the plaintiff was not entitled to a private way of necessity, but this court reversed on that issue. *Id*. at 466, 474. Because the plaintiff provided expert testimony that, without access to the easement, she would have had to build a "prohibitively expensive" road across a wetland, we held that she had raised a genuine issue of material fact as to reasonable necessity sufficient to defeat summary judgment. *Id*. at 474.

Here, it is undisputed that Nayeri's property was landlocked because access to State Route 16 was impossible and Nayeri could not condemn access from State land under chapter 8.24 RCW. *Granite Beach*, 103 Wn. App. at 204. Nayeri produced expert testimony that it was feasible to develop the property and that the best location for development would be along the Lowe's property line where the ground was flattest. And while an easement overlaid on any existing private way "must not differ from and must not be incompatible with the use to which it is already being put by the condemnees," the scope and location of the easement are nevertheless matters properly weighed by a trier of fact. *Brown*, 97 Wn.2d at 368.

It is certainly possible that Nayeri may not ultimately be able to secure any easement, much less one of the scope that he desires. But taking the facts in the light most favorable to Nayeri, he produced expert testimony that access to the property was necessary for development and that the development itself was feasible. The expert testimony disputing feasibility, and which access point was preferable, did not conclusively establish the absence of a genuine issue of material fact. *Eriks*, 118 Wn.2d at 457. Although Lowe's provided expert testimony that access from the south would

be better from a geotechnical standpoint, this merely set up a battle of the experts regarding alternative routes to access the developable area of the property. *See Sorenson*, 70 Wn. App. at 275. Nayeri's engineer declared that access through the Lowe's property was the optimal route because of traffic regulations. This constituted a genuine dispute of material fact that could not be resolved at the summary judgment stage.

We reverse the order granting summary judgment and remand for further proceedings consistent with this opinion.

## ATTORNEY FEES

A.     Attorney Fees Below

Nayeri argues that we should reverse the trial court's award of attorney fees to Lowe's and The Center under RCW 8.24.030 and "remand with instructions for the trial court to reconsider its fee awards." Br. of Appellants at 36. We disagree.

RCW 8.24.030 provides that in any action "for the condemnation of land for a private way of necessity, reasonable attorneys' fees and expert witness costs may be allowed by the court to reimburse the condemnee." We review a trial court's award of attorney fees under the statute for abuse of discretion, which occurs "when it exercises discretion in a manifestly unreasonable manner or bases its decision on untenable grounds or reasons." *Kennedy v. Martin*, 115 Wn. App. 866, 872, 63 P.3d 866 (2003).

"RCW 8.24.030 confers a trial court with discretion to award costs and fees without regard to whether the condemnee prevails." *Beckman v. Wilcox*, 96 Wn. App. 355, 365, 979 P.2d 890 (1999); *Sorenson*, 70 Wn. App. at 279. The statute does not require a taking to have occurred. *Beckman*, 96 Wn. App. at 363. "Further, the bifurcated nature of private way of necessity actions,

where the trial court first determines whether to allow a private way of necessity and then conducts a separate hearing to assess just compensation, justifies an attorney fee award even where there has been no actual taking." *Id*. at 365.

Nayeri's sole basis for seeking a reversal of the fee award is a contention that "the trial court's exercise of its discretion to award attorney fees was based on its erroneous belief that Mr. Nayeri had improperly failed to get his "'other ducks'" lined up before filing this action." Br. of Appellants at 36. But Lowe's and The Center will still be entitled to attorney fees under the statute regardless of whether Nayeri is eventually granted an easement. Nayeri contends that the trial court should reevaluate its attorney fee award and exercise its discretion, understanding that summary judgment was not warranted, but Nayeri has not explained how the trial court's attorney fee analysis would change since the award of fees is unconnected to who prevails. Because the award of attorney fees is unconnected to whoever prevails, the attorney fee statute contemplates that a potential condemnor would, in the court's discretion, bear the brunt of the legal costs of the private condemnation. Thus, we affirm the trial court's award of fees to Lowe's and The Center.

B.    Appellate Attorney Fees

Lowe's and The Center also seek appellate attorney fees under RAP 18.1(a) and RCW 8.24.030. Because we affirm the trial court's award of fees under RCW 8.24.030, Lowe's and The Center are entitled to fees on appeal upon compliance with RAP 18.1(d). We grant the requests for appellate attorney fees.

CONCLUSION

We reverse the order granting summary judgment and remand for further proceedings consistent with this opinion. We affirm the order awarding attorney fees and grant appellate

20

No. 57873-5-II

attorney fees to Lowe's and The Center in an amount to be determined by a commissioner of this court.

Glasgow, J.

We concur:

Veljacic, J.

Price, J.